## LARSEN *v.* STILLER.

1. EVIDENCE—MEMORANDUM MADE IN USUAL COURSE OF BUSINESS.
     Week-to-week records of commissions earned by defendant branch
     manager of monument business, withdrawals made by him and
     sales records, made in the usual course of business were ad-
     missible in action by owner of business against branch man-
     ager for claimed conversion of funds which defendant had
     withdrawn from bank (CL 1948, § 617.53).

2. ACCOUNT STATED—PAYMENT—FAILURE TO OBJECT.
     An account that is stated by the creditor in writing and accepted
     as correct by the debtor, either by payments thereon without
     demur or by failure within a reasonable time to question the
     state of the account as presented becomes an account stated.

3. SAME—EVIDENCE—INSTRUCTIONS—BRANCH MANAGER'S WRITTEN
   ACCOUNT.
     Written accounts of defendant branch manager of monument
     works, which had been submitted to owner showing balance due
     on commissions, and to which plaintiff owner failed to object
     within a reasonable time, were properly treated as an account
     stated in instructions to jury.

4. TROVER AND CONVERSION—MONEY.
     Branch manager who was not required to deliver to owner the
     specific or identical moneys which he had collected for mer-
     chandise sold or on accounts receivable was not liable for
     conversion of the moneys involved.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence § 1043 *et seq.*
[1] What constitutes books of original entry within rule as to ad-
     missibility of books of account.   17 ALR2d 235.
[2, 3] 1 Am Jur, Accounts and Accounting §§ 25–27.
[4] 53 Am Jur, Trover and Conversion §§ 8, 9.
[5] 1 Am Jur, Accounts and Accounting § 41.
[6] 3 Am Jur, Appeal and Error § 837.
[7] 3 Am Jur, Appeal and Error § 952.
[8] 4 Am Jur, Assumpsit § 32; 39 Am Jur, Parties § 100.

5. APPEAL AND ERROR—COMMISSIONS—INSTRUCTIONS.

Record presented in action by monument dealer against his branch manager for money claimed to be due *held*, to disclose an issue of fact as to amount to which defendant was entitled for commissions, and that trial court correctly instructed jury on such issue.

6. SAME—INSTRUCTIONS.

Instructions given to jury in action by monument dealer against branch manager for sums claimed to be due *held*, to have properly presented the many issues of fact and not to have given undue prominence as to either party.

7. SAME—SPECIAL QUESTIONS—FINDING OF JURY—RECORD.

Findings of jury in answers to special questions submitted to them in action by monument dealer to recover money from branch manager *held*, supported by the record and not to have resulted from sympathy, partiality, prejudice, passion or other improper consideration.

8. PARTIES—DEATH—EXECUTORS.

Executors of estate of party who died after appeal had been perfected were proper parties to action of assumpsit.

Appeal from Muskegon; Fox (Noel P.), J. Submitted October 14, 1955. (Docket No. 69, Calendar No. 46,379.) Decided December 28, 1955.

Case commenced by John Swensen against Roy Stiller, originally for conversion with amendment at time of trial adding counts in assumpsit. Defendant filed set-off and recoupment claiming salesman's commissions. Verdict and judgment for defendant. Plaintiff appealed. Upon death of plaintiff, action was revived in the names of Marian Swensen Larsen and Cameron Wuerfel, executors of the estate of John Swensen, deceased. Affirmed.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for plaintiffs.

*William J. Balgooyen* and *Harry J. Knudsen,* for defendant.

SHARPE, J. Plaintiff, John Swensen, was engaged in the business of designing, building, and selling monuments and other cemetery memorials. In 1940 he employed defendant as a salesman and agreed to pay him a commission of 20% on gross sales, based upon list prices furnished by plaintiff. Defendant's right to receive full commission was contingent upon his collecting the purchase price of stones and monuments sold by him. The territory originally assigned to defendant included Mason and Oceana counties. At a later date defendant's territory was enlarged to include the Muskegon territory. During World War II defendant was a part-time salesman for plaintiff. During the fall of 1946 plaintiff established a place of business in Muskegon Heights, Michigan, for the purpose of providing a local office and displaying monuments. Defendant was made branch manager of this branch of plaintiff's business. In April of 1947, plaintiff, in order to enable defendant to conduct his business in Muskegon county, opened and thereafter maintained a bank account with the Hackley Union National Bank in the city of Muskegon Heights, under the name of "Swensen Monument Works," into which defendant deposited moneys collected by him for plaintiff. Defendant was authorized to draw, and did draw, checks on the account signed by himself, including checks to himself for his weekly drawing account and for other expenditures. Commencing in 1948 or 1949, contracts were made in triplicate instead of in duplicate, 1 copy going to plaintiff, 1 copy going to the customer, and 1 copy retained by defendant.

Cemeteries in Muskegon county made charges for providing foundations for monuments, depending upon the size of the stone or monument. In such cases defendant, as an accommodation to the purchaser, advanced the foundation charges and

charged the purchaser such cost in addition to the list price of the monument. Cemeteries also made charges for future services. Whenever this was done defendant advanced the amount of the service charge, and added the exact sum advanced to the selling price of the monument. On sales made after the opening of the Muskegon Heights office, the purchaser of the stone or monument was required to pay the sales tax. Defendant prepared weekly reports of collections, deposits, and expenses paid by him, and these were sent to plaintiff each month. On June 3, 1952, defendant drew a check to himself in the amount of $8,250, claiming that unpaid compensation in excess of that amount had accumulated to his credit upon the books of the branch agency. No permission was sought or granted for the withdrawal of the above sum. Plaintiff made several demands upon defendant for a return of the money, and failing to receive said money, plaintiff, on August 27, 1952, discharged defendant from his employment.

On January 8, 1953, plaintiff filed a declaration in the circuit court of Muskegon county against defendant. The declaration contained a single count in trespass on the case for the conversion of money. On January 28, 1953, defendant filed an answer to plaintiff's declaration in which he admitted the withdrawal of the sum of money from the bank. By his answer he sought to justify the withdrawal and the appropriating of the proceeds to his own use, by claiming that on the date the check was drawn, plaintiff was indebted to defendant in an amount in excess of the check. Upon the trial of the cause, plaintiff offered proof of the payment of the money to defendant and then rested his case. Thereupon defendant moved for a directed verdict upon the theory that an authorized payment

could not constitute a conversion. The court denied the motion.

During the course of the trial plaintiff amended his declaration by the addition of a count in assumpsit for conversion, and by the addition of the common counts in assumpsit. Defendant amended his answer and notice of set-off and recoupment by adding to the notice of set-off and recoupment on the theory of an account stated. During the course of the trial, defendant offered in evidence a letter received from plaintiff in August of 1945 in which plaintiff acknowledged that he was indebted to defendant in the amount of $2,412.24, and also introduced in evidence his original books of entry, showing commissions earned, amounts withdrawn by defendant, and other debits and credits.

At the conclusion of defendant's proofs, plaintiff made a motion for a directed verdict. The court denied the motion. Plaintiff then offered proof attempting to show the amount due defendant was not the amount claimed by defendant. The cause was submitted to a jury, with instructions to give specific answers to the following questions:

"1. Did the defendant, Roy Stiller, by a distinct act of dominion, wrongfully convert to himself specific money, if any, belonging to the plaintiff?

"That, you will answer 'yes' or 'no.'

"2. Is the amount, if any, found by you, the result of a difference between the parties upon mutual accounts only?

"Yes or no.

"3. Was the defendant, Roy Stiller, entitled to a commission on foundations and handling charges made by the cemeteries?

"Yes or no.

"4. Was the defendant, Roy Stiller, entitled to a commission on sales tax for years other than the years 1951 and 1952?

"5. Do you find plaintiff agreed to pay the defendant a 3% collection fee at any time before April, 1949?

"6. Do you find plaintiff ever became obligated to the defendant in the amount claimed by the defendant in the annual, so-called, master sheets?"

The jury returned a verdict in favor of defendant in the amount of $441.05, and answered questions numbers 1 and 5 "no" and "yes" to questions 2, 3, 4 and 6.

Thereafter, plaintiff filed a motion for a new trial, and among the reasons given are the following:

"Because the court erred in denying plaintiff's motion for a directed verdict.

"Because the verdict of the jury is contrary to law and the instructions of the court.

"Because the verdict of the jury is contrary to the great weight of the evidence.   *   *   *

"Because the verdict is grossly excessive."

The trial court denied plaintiff's motion for a new trial, from which order plaintiff appeals and urges that the trial court was in error in admitting in evidence defendant's exhibits 2 to 9, inclusive, and in refusing to grant plaintiff's motion to strike the foregoing exhibits.  It appears that exhibits 2 to 9 were week-to-week records of commissions earned by defendant, withdrawals made by him, and showed the balance due from time to time.  Defendant testified that the first 5 of these exhibits were copies of the originals, while the latter 3 were originals.  Defendant also testified:

"*Q.* Now, your exhibits 2 to 9.  Directing your attention to exhibits 2 to 9, which do you claim were copies and which do you claim were originals of those exhibits?  Give your answer by numbers, please.

"*A.* Exhibits number 2, being the year 1945, going upwards to 1950, would be copies.  The last 3 exhibits, 6 to 9, would be originals.

"*Q.* 9 would be the only original?

"*A.* No, 6 to 9, '51, and '52.

"*Q.* 1950, '51, and '52 are originals?

"*A.* Yes.

"*Q.* And exhibits 2 to 6, for the prior years, are copies?

"*A.* I would say that.

"*Q.* When did you prepare 7, 8 and 9?

"*A.* As I always did, in the month of December, at the year ending.

"*Q.* And you prepared them, as you say, by each week placing those identical sheets in the typewriter?

"*A.* Yes.

"*Q.* And you claim that that procedure caused the sheets to become worn and torn?

"*A.* From the beginning, yes.

"*Q.* And you claim that it was for that reason that you destroyed your original copies?

"*A.* That would be the reason."

Defendant also testified that copies of these exhibits had been sent to plaintiff and received by him without protest or objection. The trial court, in admitting the exhibits in evidence, stated:

"The argument as to self-serving declarations can apply with equal force to every record of account— office record, that is, kept in the usual course of business. The statute was intended to make an exception to the hearsay rule. That statute was intended, primarily, to make an exception. Originally, documents of records of accounts were inadmissible, the test is one as to whether or not these were records which were kept in the usual course of business— whether or not they come within what is the definition of shop books, and whether or not they were made in the usual course of business. The exception to the hearsay rule on such proposition is for trustworthiness—that having been made in the usual course of business, they are made while the events are still fresh in the mind of the maker, and not

when there is an intention to fabricate, and an intention to record what the events and transactions were.  They would be admissible as shop books if they were made in the usual course of business and records of a tradesman or account books, and they don't have to be in any particular form, nor do they have to be books necessarily required to be kept by a business.  If they were—at the present time, that is not a restriction within the contemplation of the law, and they don't have to be in any particular form, just so long as they appear to be the shop records, the transactions made in the usual course of business.  *  *  *  So far, there is testimony that these records were sent, periodically, in some instances monthly and in some instances annually— annually and monthly to Mr. Swensen.  Mr. Swensen denies, in part, that he received these records and that his attention had been directed to them—then that creates a question of fact for the jury.  It seems to the court that if these are the documents kept in the Muskegon office of the records of these transactions, and ties in with the sales, it would be a record of business transactions, and admissible."

In our opinion these exhibits were admissible in evidence by virtue of CL 1948, § 617.53 (Stat Ann § 27.902).

Plaintiff also urges that the trial court was in error in admitting exhibits 10 through 17, inclusive, and in refusing to grant plaintiff's motion to strike the foregoing exhibits.  Exhibit 10 consists of 5 sheets.  Defendant testified:

"*A*. These sheets were the system that I used of keeping track of my individual commissions.  Such sheets like this were not sent to Manistee, since they were the exact copies of the contract itself. I would enter the name of the purchaser, the date of the sale, and the amount of the sale.  This was kept out, and at the end of the week it was added onto the master sheet, showing the amount I would

deduct for my individual pay.    These show in--
dividual commissions I made weekly upon sales.
\*    \*    \*

"*Mr. Balgooyen:* Now, Mr. Stiller, I wish to show
you defendant's exhibit 11, or rather, a paper marked
defendant's exhibit 11, consisting of 4 pages; de-
fendant's exhibit 12, consisting of 4 pages; defend-
ant's exhibit 13, consisting of 5 pages; defendant's
exhibit 14, consisting of 5 pages; defendant's exhibit
15, consisting of 5 pages; and defendant's exhibit 16,
consisting of 4 pages; and defendant's exhibit 17,·
consisting of 4 pages.    Will you tell the jury
what these papers are?

"*A.* These sheets are records showing each in-
dividual sale entered, since the sale was made.    Such
sheets started out from the very beginning, the·
first of each year, and continued on through.    It
shows the number of contracts sold, the dates, the
amounts, and the computation of the commissions.
\*    \*    \*

"*The Court:* These are offered as records of the
ordinary course of business, they are not offered
for the purpose of the contract, but showing the
information upon which the master sheets were
predicated.    These sheets were then based upon the
contract, is that right?

"*A.* Yes.    \*    \*    \*

"*The Court:* They may all be introduced.    You
may introduce the original contracts, too, if you
want to.    That is in the usual course of business."

It was not error to admit these exhibits in evidence
for the reason stated above relative to exhibits 2 to 9.

Plaintiff urges that the evidence affords no basis
for finding that there was an account stated between
plaintiff and defendant.    The trial court instructed
the jury as follows on this issue:

"The defendant claims that the amount shown due
to him on exhibits 2 through 9, inclusive, are due him
on the theory of account stated.    An account stated

is an agreement between parties who have had previous transactions of a monetary character; that all items of account representing such transactions are true, and that the balance struck is correct, together with the promise, either express or implied, for the payment of such balance. The failure of the debtor to object, within a reasonable time, you may interpret as an admission of the correctness of the account. It is for you, ladies and gentlemen of the jury, to determine whether objections were made, or whether they were made within a reasonable time, having due regard to all the facts and circumstances in the case.

"Now, the mere rendering of an account is not an account stated. An account stated must be an arrangement consented to either by acts of the parties or otherwise. It must be a contractual relationship existing between the parties. A statement is not at law an account stated unless both parties have agreed, by a contract arrangement or by their own actions, that it is correct. If you find from the evidence that the defendant, Roy Stiller, submitted accounts to the plaintiff, Swensen, showing balances due on his commission account, and if you further find that the plaintiff failed to object to the account showing the balances due to the defendant, Roy Stiller, within a reasonable time, such failure you may consider as an admission of the correctness of the account."

In *Corey* v. *Jaroch*, 229 Mich 313, 315, we said:

"When an account is stated in writing by the creditor and accepted as correct by the debtor, either by payments thereon without demur or by failure within a reasonable time to question the state of the account as presented, it becomes an account stated."

There is evidence in this case from which a jury could determine that defendant submitted an account to plaintiff showing a balance due on his commissions account, and that plaintiff failed to

object to such statement. We conclude that it was not error to give the above instructions to the jury.

Plaintiff also urges that an action of trespass on the case was the proper form of action to recover from defendant the proceeds of the check unlawfully retained by defendant, and that the trial court was in error in holding that plaintiff could not recover under the conversion count of his declaration.

In *Garras* v. *Bekiares,* 315 Mich 141, 147, we said:

"It should be noted that defendant was not required to deliver to plaintiff the specific or identical moneys which he collected for merchandise sold or on accounts receivable, but was only required to pay plaintiff the invoiced price for merchandise delivered to him. Therefore, as plaintiff was not entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion."

Under the above authority, plaintiff was not entitled to recover under the conversion count of his declaration. It was not error for the trial court to so hold.

Plaintiff urges that the trial court was in error in refusing to charge the jury that defendant was not entitled to compute commissions on sales taxes, charges by cemeteries for foundations, and for handling charges. The trial court instructed the jury as follows:

"The plaintiff denies that he ever agreed that the defendant would be entitled to compute his commissions on the selling price of the monuments, plus sales tax thereon, and that the plaintiff ever said anything to the defendant that would warrant defendant's assuming that he had a right to include sales tax in computing his commission, and he says that the dealings between the parties negative any such right. The plaintiff further says that the customs, dealings and acts between the defendant

and himself negative any right on the defendant's part to add the sales tax to the selling price of the monument in fixing the amount upon which the defendant's commission should be computed.

"The plaintiff further says that he never agreed that the defendant was entitled to charge his commission on the amount charged to the purchaser of the monument for the expense charged for installing the foundation, and that the defendant, himself, in computing the commissions earned by other salesmen employed by the defendant, excluded the cost of the foundations in computing the commissions of such salesmen.   *   *   *

"It is the defendant's claim that he was entitled to a commission of 23% of the total sales made by him, and an additional 3% on sales made by other salesmen, as a collection charge.   There is also a dispute in this case over how the rate of commission was to be computed.   The defendant says that he was entitled to a commission on the total contract price, which the defendant claims includes the stone, sales tax, and foundation charge."

The record in this case clearly shows that there was an issue of fact as to the amount of commissions defendant was entitled to.   The trial court correctly instructed the jury on this issue.

Plaintiff also urges that he was prejudiced by the court having misdirected the jury in his charge, in that it was confusing, misleading, repetitious, and gave undue prominence to defendant's theory of the case.   The record shows that there were many issues of fact involved in this case upon which the jury were entitled to instructions.   We have examined the instructions carefully, and conclude that the theories of both plaintiff and defendant were properly presented to the jury, without undue prominence as to either party.

It is also urged by plaintiff that the findings of

the jury in their answers to the special questions are against the great weight of the evidence, and that such findings of fact are the result of sympathy, partiality, prejudice, passion, and other improper considerations. In our examination of the record we fail to find substantive proof to support plaintiff's charges; moreover, the answers to the special questions by the jury find support in the record. We note that after the appeal had been perfected, John Swensen died on February 9, 1955. His executors are now proper parties plaintiff by an order of the probate court of Manistee county.

The judgment is affirmed, with costs to defendant.

CARR, C. J., and BUTZEL, SMITH, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.