Leon ROSEN

v.

HOTEL AND RESTAURANT EMPLOYEES & BARTENDERS UNION OF PHILADELPHIA, BUCKS, MONTGOMERY AND DELAWARE COUNTIES, PENNSYLVANIA, LOCAL 274 and Hotel and Restaurant Employees & Bartenders International Union Pension Fund and Victor P. Civatte.

Civ. A. No. 77–4252.

United States District Court, E. D. Pennsylvania, Civil Division.

March 31, 1980.

Martin Leonard, Philadelphia, Pa., for plaintiff.

Warren J. Borish, Robert W. Costigan, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Before the Court is a suit brought by Leon Rosen against the Hotel and Restaurant Employees and Bartenders Union (hereinafter Local 274), the Hotel and Restaurant Employees and Bartenders Union Pension Fund (hereinafter the Fund), and Victor P. Civatte, a former trustee of the Fund. Plaintiff is seeking pension benefits

from the Fund.[1] Jurisdiction is based on § 301 of the National Labor Relations Act. 29 U.S.C. § 185 (1976).

## FACTS

From January, 1958 until June, 1976, plaintiff was a dues paying member of Local 274. (Local 274 succeeded the Chefs, Cooks, Pastry Cooks and Assistants Union, Local 111 (hereinafter Local 111)). As a result of a collective bargaining agreement, there was created a separate entity known as the Local 111 Pension Plan to provide for those union members who attain the age of sixty-two (62) years; and who also accumulate at least fifteen (15) years of credited service. Credit was given for years of service between January, 1958 when the union was formed and October, 1967 when the pension plan was established. Defendant Victor P. Civatte was one of the trustees of the Plan. Local 111 merged into Local 274, and in 1975, the Plan merged with the defendant Fund.

From 1958 to 1974, plaintiff worked in the Walnut House, a unionized restaurant. Both plaintiff and his employer were obligated to make contributions to the Plan (and later the Fund). From 1967 to 1971 plaintiff paid his share as an employee, but his employer never made any contributions. In 1971, Civatte, as trustee of the Fund, advised plaintiff that his pension was in jeopardy due to his employer's failure to make payments. Civatte provided plaintiff with a tabulation of the amount owed. On November 3, 1971, plaintiff paid the Plan $419.20 of his own funds, the total amount of arrearages owed by his employer for the period October, 1967 to November, 1971. However, even after November, 1971, plaintiff's employer made no contributions to the plan. This deficiency was not advanced by Rosen, although he continued to pay his employee's share.

In 1975, plaintiff applied for a pension. In a letter dated May 18, 1976, the Fund stated that their records showed that plain-

---

1. Plaintiff filed a motion for summary judgment in which he raised many of the issues discussed in this opinion. The motion was de-

nied. *Rosen v. International Pension Fund, et al.*, No. 77–4252 (E.D.Pa. March 21, 1979).

tiff had a total of fifteen years credited service, but he had not yet reached the minimum age of sixty-two years. Rosen continued working until his sixty-second birthday and in June, 1976 he reapplied for a pension. The Fund again rejected his application, responding that Rosen's employer had not remitted contributions on his behalf for the period October, 1967 to November, 1971, and that his subsequent employer had not made contributions for the period February, 1974 to May, 1975.[2] Rosen was also informed that the Fund did not "allow for payment of contributions to the Fund by an employee for the purpose of acquiring credited service toward a pension benefit." Therefore, Rosen had suffered a break in service and was not eligible for a pension. Rosen's prior payment, accepted by Civatte, was returned with interest.

## DISCUSSION

The issues presented are: 1) whether the determination that the plaintiff did not meet the requirement of fifteen years of credited service was arbitrary and capricious; 2) if this requirement was not met, whether defendants are estopped from asserting this as a defense; and 3) whether the Fund can be held liable for not insuring that Rosen's employer made the requisite payments to the Fund.

Plaintiff argues that the pension fund requirements call for contributions to be submitted on an employee's behalf; nothing precludes him from making payments on his own behalf. Plaintiff contends that his payment to Civatte corrected his employer's delinquency so he suffered no break in service. Therefore, the trustees' determination that he was ineligible for a pension was arbitrary and capricious.

 Plaintiff correctly states the standard of review; the trustees' decision will stand unless it is arbitrary and capricious in light of the language of the plan. *Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir. 1978); *Phillips v. Kennedy*, 542 F.2d 52, 54 (8th Cir. 1976); *Gomez v. Lewis*, 414 F.2d 1312, 1314 (3rd Cir. 1969). To be eligible for a pension, the plan requires that an employee have fifteen years credited service. This is not disputed. But even if Rosen is credited with service until November, 1971, he is still two years shy of the requisite number of years. Rosen would not have attained fifteen years service until September, 1973.[3] (Tr. 102). Therefore, apart from whether Rosen's payment on his own behalf was proper, Rosen was required to show that his employer made payments until September, 1973. Since it is Rosen's burden to demonstrate his eligibility, *Feathers v. Health and Retirement Funds*, No. 76–1085 (D.C.D.C.1978) 99 LRRM 2287, the Court must conclude that the trustees' decision was not arbitrary and capricious, but was mandated by the terms of the plan. No evidence was offered at trial to show that employer payments were made subsequent to 1971.[4] In my memorandum denying summary judgment, I ruled that estoppel may provide a basis for relief in actions by employees to recover pension benefits, but even assuming defendants are estopped from denying that employer contributions were made for the period 1967 to 1971, there is no basis in the record for applying this principle for the period 1971 to 1973. When Civatte informed Rosen that his employer was in arrears, he provided Rosen with a detailed statement of the amount due. This statement showed that the money was for the period prior to November, 1971. Thus, Rosen knew that this payment did not assure him of a pension, but merely brought his account up to date. Civatte's acceptance of Rosen's check does not pre-

**2.** The period from February, 1975 to May, 1975 is not at issue in this case as Rosen would have had fifteen years of service as of September, 1973.

**3.** In the letter dated May 18, 1976, the Fund stated that Rosen had fifteen years of credited service. Although the plaintiff did not raise this issue, the Court notes that this does not estop the Fund from later denying this after further check of their records. *See, Feathers v. Health and Retirement Funds*, No. 76–1085 (D.C.D.C.1978) 99 LRRM 2287.

**4.** Because plaintiff was unaware until trial that he had to show that payments were made during this time, the Court allowed an additional two weeks for submission of evidence on this point. None was offered.

524

vent the Fund from denying that employer contributions were made after 1971, and, therefore, Rosen is ineligible for a pension.

Plaintiff's final contention is that defendants breached their fiduciary duty by not collecting the delinquent employer payments. Rosen would have received a pension had these payments been made.

It is clear that the union had no duty to see that the employer contributions were made. The local union is a separate entity which does not have any right of control over the trust funds and its assets. *United States v. Santiago*, 528 F.2d 1130, 1133 (2d Cir.), *cert. denied*, 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976); *Lewis v. Seanor Coal Co.*, 256 F.Supp. 456, 461 (W.D. Pa.1966), *aff'd*, 382 F.2d 437 (3rd Cir. 1967), *cert. denied*, 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968).

The trustees of a pension fund and the fund itself owe a fiduciary duty to potential pensioners. A pension fund's trustees "have fiduciary duties in connection therewith as do any other trustees." *United Marine Division v. Essex Transportation Co.*, 216 F.2d 410, 412 (3d Cir. 1954). In *Nedd v. United Mine Workers of America*, 556 F.2d 190 (3d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978), the court stated that trustees have an obligation to enforce pension agreements with "the standard of care of common skill, common prudence and common caution which reasonable men would be expected to exercise with respect to their own property." *Id.* at 213. The pensioners in *Nedd* charged that the trustees failed to vigorously pursue the delinquencies of over $12,000,-000 because to do so would have forced

mine closings, costing union members jobs.[5] *Id.* at 207–208. The Court held that the trustees breached their fiduciary duty to the pensioners by subordinating their interest to that of union workers.

The present case is distinguishable from *Nedd* in that Civatte and the other trustees pursued a policy of enforcement that was consistent with Rosen's interest. The trustees did visit Rosen's place of employment[6] in an effort to collect the delinquencies. The owner would not pay, claiming that the business was in financial difficulty and he could not afford the payments.[7] (Tr. 58, 79). They considered picketing the establishment but felt that Rosen would not want this as his employer at the time was his sister and brother-in-law. (Tr. 68). Finally, the trustees did discuss the matter with legal counsel but no legal action was taken. (Tr. 68).

These policies were consistent with the degree of diligence that Rosen exercised to secure his pension. Rosen claims he did not know prior to 1971 that his employer was not making payments to the Fund. This contention is doubtful in light of Civatte's testimony to the contrary (Tr. 59) and because Rosen's employer, for part of the time, was his sister and brother-in-law. It is clear, however, that in 1971 Rosen learned that payments were not being made, yet Rosen did nothing thereafter to verify his employer's contributions. Unlike *Nedd*, in which the pensioners urged the trustees to collect the delinquent funds, Rosen was indifferent and pressured neither the trustees, the employer nor the union to secure the contributions. Given the condition of the restaurant industry at the time, a suit by the trustees to collect the funds

5. *Nedd* involved a structural violation of the Labor Relations Management Act, 29 U.S.C. § 186(c)(5), in that the union was over-represented in the number of trustees of the fund. 556 F.2d at 207–209. This is why they followed a policy which favored union workers. Although no structural violation is involved here, the fiduciary standards articulated in *Nedd* are applicable.

6. Rosen worked at the Walnut House, a restaurant at 23rd and Walnut, until 1974, the relevant time period in this case.

Although the testimony was not precise, it appears that Rosen's sister and brother-in-law ran the restaurant until 1969. From 1969 to 1971, it was owned by a Mr. Kane who sold it to a Mr. Gonzales who owned it until it closed in 1974. (Tr. 9–10, 57).

7. Civatte testified that from 1966 to 1976 about 110 restaurants had to close because of bad business.

While Rosen was the only member of Local 111 employed at the Walnut House, other employees were members of a different union, local 301. (Tr. 55–56).

was not a very practical solution since it may have forced the closing of the restaurant and the loss of Rosen's job. I am satisfied that the trustees pursued a course of action that was in plaintiff's best interest and did not breach any fiduciary duty owed him.

In reaching this decision, the Court is mindful of the consideration that the financial integrity of pension funds is to be protected for the benefit of all who may be eligible. The Eighth Circuit in *Phillips v. Kennedy*, 542 F.2d at 55 n.8 commented that

> [t]he actuarial soundness of the pension fund is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan.

Accordingly, judgment will be entered in favor of the defendants and against the plaintiff.

This Memorandum of Decision contains the Court's Findings of Fact and Conclusions of Law as required by Fed.R.Civ.Pro. 52(a).