**Curtis JUSTICE, et al., Plaintiffs,**

**v.**

**BANKERS TRUST COMPANY, INC., a foreign corporation, et al., Defendants.**

**Civ. A. No. CV83–L–5188–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

April 19, 1985.*

---

\* The Court acknowledges the exceptional contribution of Michael R. Pennington, Law Clerk, to the preparation of this opinion.

Brinkley & Ford, J. Allen Brinkley, Robert H. Ford, Daniel F. Aldridge, Price & Henson, Walter J. Price, Jr., Huntsville, Ala., for plaintiffs.

Bradley, Arant, Rose & White, Samuel H. Franklin, Richard H. Walston, Birmingham, Ala., for defendants.

## MEMORANDUM OF OPINION

LYNNE, Senior District Judge.

This case involves so-called "welfare" benefits under a supplemental unemployment benefit ("SUB") plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The SUB Plan at issue was created by a collective bargaining agreement between employer Revere Copper & Brass, Inc. ("Revere"), and the United Steelworkers of America, AFL–CIO ("the Union"), which is the union representing employees at Revere's Scottsboro facilities. In order to effectuate the terms of the SUB Plan, Revere entered into a trust agreement to provide for the custody and investment of plan assets. Defendant Bankers Trust Company was appointed trustee pursuant to this agreement.

Under the original terms of the plan, the trust fund was pre-funded. However, the plan was later amended to provide for funding by Revere on an "as-needed" basis; in other words, Revere was to pay into the fund only so much as was required to pay the calculated benefits due for a particular week.

In October, 1982, Revere filed for reorganization under Chapter 11 of the Bankruptcy Code and simultaneously ceased making payments to the trust fund for distribution of benefits. On the same day that Revere filed its Chapter 11 petition, Revere notified the Union that it intended to declare bankruptcy and cease making certain benefit contributions, including SUB Plan contributions. The Union promptly filed a grievance which has since been held in abeyance in deference to the bankruptcy proceedings.

In addition, the Union is presently pursuing a claim in the bankruptcy proceedings for all outstanding SUB Plan benefits due under the terms of the amended Plan. Apparently, the principal issue in regard to

the Union's claim in bankruptcy is whether the plan participants and beneficiaries are administrative creditors (and hence entitled to 100 cents on the dollar) or trade creditors (and hence entitled to only 65 cents on the dollar). Deposition of Carl Statum at 79–89, 92–95.

Plaintiffs in the instant case are certain employees of Revere claiming entitlement to supplemental unemployment benefits which apparently were "guaranteed" under the collective bargaining agreement. Plaintiffs are obviously precluded from proceeding directly against Revere in this Court due to the pendency of the bankruptcy proceedings, *see* 11 U.S.C. § 362, and apparently are not content to await the outcome of the claims made against Revere on their behalf in bankruptcy court. Instead, plaintiffs seek to recover their "guaranteed" benefits (and related damages) from Bankers Trust, on the theory that Bankers Trust breached certain fiduciary duties owing to the plaintiffs under ERISA. Primarily on this basis, the plaintiffs filed suit in the Circuit Court of Jackson County, Alabama. The complaint alleged not only that Bankers Trust violated its fiduciary duties under various sections of ERISA, but also that Bankers Trust was liable for alleged breaches of fiduciary duties by Revere. In addition, plaintiffs raised state law claims of fraud and misrepresentation, conversion, and a claim for money had and received. Bankers Trust removed the lawsuit to this Court on the basis of federal question jurisdiction under ERISA. A subsequent motion to remand filed by the plaintiffs was denied. Several months later, on September 24, 1984, Bankers Trust filed a motion for summary judgment. After numerous continuances and extensions of time to allow plaintiffs to adduce all available evidence in opposition to the motion, with a full opportunity having been afforded the parties to complete discovery, the motion is now ripe for adjudication. There being no genuine issue as to any material fact, the Court concludes that the defendant is entitled to judgment as a matter of law.[1]

The state law claims will be dealt with at the outset.[2] With regard to the claims for conversion and for money had and received, the thrust of those claims is the mismanagement or wrongful administration of the corpus of an ERISA trust fund. Similarly, the claims of fraud and misrepresentation are premised upon the suppression of material facts which Bankers Trust, as a plan fiduciary, was obligated to disclose. Viewed in this light, it becomes plain that no recovery may be had upon these state law claims unless the right to such recovery arises under ERISA. Section 514 of ERISA, 29 U.S.C. § 1144(a), preempts all state laws that "relate to" any employee benefit plan:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede *any and all* state laws insofar as they may now or hereafter *relate to* any employee benefit plan described in § 1003(a) of this title and not exempt under § 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis supplied). The only state laws expressly exempted from ERISA's broad preemptive sweep are those laws regulating insurance, banking and securities, and criminal laws of general application. 29 U.S.C. § 1144(b).

▪ In light of this express Congressional declaration of preemptive intent, the Court need not determine whether and to what extent state law fraud and misrepresentation principles might conflict with or alter the requirements of ERISA. *See Brown v. Hotel & Restaurant Employees & Bartenders International Union Local 54*, — U.S. —, — – —, 104 S.Ct. 3179, 3185–86, 82 L.Ed.2d 373, 382–83

---

1. The decision the Court reaches will not materially affect the resolution of the claims made against Revere on behalf of plaintiffs in the bankruptcy proceedings.

2. The state law claims have been largely ignored by both parties in their briefs on the pending summary judgment motion. However, these claims are fairly addressed by the motion itself, *see* Defendant's Motion for Summary Judgment, ¶¶ 3 and 4, and they are ripe for adjudication.

(1984); *Fidelity Federal Savings & Loan Assoc. v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). The import of the statutory language cannot be mistaken. As the Supreme Court stated in *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981), ERISA was "meant to establish pension plan administration as exclusively a federal concern."

Recently, in *Shaw v. Delta Air Lines Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court confirmed ERISA's broad preemptive sweep and further confirmed that the term "relate to" as used in the Act was to be given a liberal and broad interpretation. As noted by the Court, it was the intent of Congress to eliminate all possibility of conflict with state law principles and to make the field of employee benefit plans exclusively federal in nature. 463 U.S. at 99, 103 S.Ct. at 2901, 77 L.Ed.2d at 502. Indeed, Congress considered and rejected a proposal to limit the preemptive scope of the statute to the specific areas and issues concerning employee benefit plans directly regulated by ERISA's express provisions, reasoning that "[s]uch a formulation raised the possibility of endless litigation over the validity of state action that might impinge on the federal regulatory scheme." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 99, n. 20, 103 S.Ct. at 2901, n. 20, 77 L.Ed.2d at 502, n. 20 (1983). *See also* 120 Cong.Rec. 29942; *Hewlett-Packard Co. v. Barnes,* 425 F.Supp. 1294, 1298–1300 (N.D.Cal.1977), *affirmed* 571 F.2d 502 (9th Cir.1978), *cert. denied* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1130–31, n. 4 (E.D.Pa.1977), *affirmed* 582 F.2d 1273 (3d Cir.1978). Thus, the settled construction of 29 U.S.C. § 1144(a) is that it preempts not only state laws dealing with the subject matters directly covered by ERISA, but also any state laws which "relate" either directly or indirectly to an employee benefit plan. *Shaw v. Delta Air Lines,* 463 U.S. at 95–100, 103 S.Ct. at 2899–2901, 77 L.Ed.2d at 501–502. *Accord, Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir.1977),

*cert. denied* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *District 65, UAW v. Harper & Row Publishers, Inc.,* 576 F.Supp. 1468 (S.D.N.Y.1983). *See generally American Progressive Life and Health Ins. Co. of New York v. Corcoran,* 715 F.2d 784 (2d Cir.1983); *Bucyrus-Erie Co. v. Dept. of Industry, Labor and Human Relations,* 599 F.2d 205 (7th Cir.1979), *cert. denied* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980).

In the instant case, it is clear that the state law claims of fraud and misrepresentation are preempted. As noted above, these claims are based upon the alleged suppression of material facts which Bankers Trust, as a plan fiduciary, was under an obligation to disclose. Because any fiduciary duties owed by Bankers Trust arise under ERISA, or the trust agreement governed by ERISA, the liability of Bankers Trust for any suppression of material facts relating to the plan or its assets must be adjudged solely by reference to ERISA. Insofar as state law fraud and misrepresentation principles are relevant here, they relate directly or indirectly to the duties or liabilities of Bankers Trust in connection with the ERISA plan at issue and are thus preempted. *See District 65, UAW v. Harper & Row Publishers, Inc.,* 576 F.Supp. 1468, 1487 (S.D.N.Y.1983) (common law claims of fraud, conversion, unjust enrichment, and tortious interference with contract preempted by ERISA); *Ogden v. Michigan Bell Telephone Co.,* 571 F.Supp. 520, 524 (E.D.Mich.1983) (common law fraud claim dismissed as preempted by ERISA); *Whitaker v. Texaco, Inc.,* 566 F.Supp. 745 (N.D.Ga.1983) (state law misrepresentation and breach of fiduciary duty claims preempted by ERISA); *Ziskind v. Retail Clerks International Association,* 3 E.B.C. 1012, 1014–1015 (E.D.Cal.1982) (state cause of action for negligent misrepresentation preempted by ERISA). *Cf. Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.1981), *cert. denied* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (common law tortious interference with contract claim preempted by ERISA).

Similarly, the counts for conversion and for money had and received relate to the corpus of an ERISA trust fund and are undoubtedly preempted. *See UAW v. Dyneer Corp.*, 4 E.B.C. 1486, 1488 (N.D.Ohio 1983), *affirmed* 747 F.2d 335 (6th Cir.1984); *District 65, UAW v. Harper & Row Publishers, Inc.*, 576 F.Supp. at 1487. *Cf. Shaw v. Association of Machinists & Aerospace Workers Pension Plan*, 563 F.Supp. 653 (C.D.Cal.1983) (common law breach of contract claim preempted by ERISA).[3] Thus, the liability of Bankers Trust on the facts of this case must be judged according to ERISA, and ERISA only.

Turning then to the ERISA claims, the following violations appear to be asserted by the plaintiffs:

(1) Bankers Trust violated 29 U.S.C. §§ 1104 and 1106 in that it improperly refunded certain 1980 contributions to Revere, thereby engaging in a transaction involving the assets of the plan for the benefit of a party in interest and breaching its fiduciary duties to apply plan assets solely to the benefit of plan participants and beneficiaries;

(2) Bankers Trust violated its fiduciary duties under 29 U.S.C. § 1104(a)(1) by failing to pay out sums due under the contract; by failing to discharge its duties for the exclusive purpose of providing benefits to participants and their beneficiaries; and by failing to discharge its duties with reasonable care, skill, prudence and diligence under the circumstances.

(3) Bankers Trust is liable for an alleged breach of fiduciary duties committed by Revere under 29 U.S.C. § 1105(a).

■ With regard to the alleged breach of Bankers Trust's duty to apply trust assets solely to the benefit of the plan participants and beneficiaries, the plaintiffs base their claim of a violation of § 1104 and § 1106 on the fact that in 1980, Bankers Trust returned certain contributions to Revere. Bankers Trust has adduced evidence that the contributions were returned because the contributions were made by mistake of fact. *See, e.g.,* Deposition of Susan Proctor at p. 13, Exhibit 5. In these circumstances, ERISA allows a trustee to return contributions upon timely demand. 29 U.S.C. § 1103(c)(2). *See also Teamsters Local 639–Emp. Health Trust v. Cassidy Trucking*, 646 F.2d 865 (4th Cir.1981); *Ethridge v. Masonry Contractors, Inc.*, 536 F.Supp. 365 (N.D.Ga.1982). On the other hand, plaintiffs have adduced no evidence tending to establish that the contributions were improperly refunded, and no evidence that Bankers Trust otherwise diverted plan assets or engaged in transactions for the benefit of Revere or any other party in interest. Thus, there exists no genuine issue of material fact with regard to these claims, and defendant is entitled to judgment as a matter of law.

■ With regard to the Section 1104(a)(1) claims of breach of fiduciary duty by Bankers Trust, the first step is to identify the fiduciary duties owed by Bankers Trust. The obligations of a trustee of trust assets, such as Bankers Trust, are limited to those responsibilities imposed by ERISA and those imposed by the trust agreement or the plan itself. *Fine v. Semet*, 699 F.2d 1091, 1093 (11th Cir.1983). In the instant case, the SUB Plan itself, which was part of a contract between Revere and the Union to which Bankers Trust was not signatory, imposed no direct obligations upon Bankers Trust as such. The plan did not list Bankers Trust as a "named fiduciary" as defined in 29 U.S.C. § 1102.[4] How-

---

**3.** In any event, the uncontroverted deposition testimony of Susan Proctor reflects that Bankers Trust has neither converted trust monies nor improperly withheld payment of benefits. Thus, even assuming that claims for conversion and for money had and received were not preempted, defendant would still be entitled to summary judgment. There simply exists no genuine issue of material fact in regard to these claims, as no evidence sufficient to substantiate these claims is apparent from the record.

**4.** The plaintiffs have never contended that Bankers Trust was a "named fiduciary" under the terms of the plan, although they have demonstrated that Bankers Trust, in its capacity as trustee, did meet the statutory definition of an ordinary "fiduciary". *Compare* 29 U.S.C. § 1102 *with* 29 U.S.C. §§ 1002(21), 1103.

ever, the trust agreement between Revere and Bankers Trust did designate Bankers Trust as the trustee of plan assets and imposed upon Bankers Trust the duty to "(a) hold, invest and reinvest the Trust Fund, and (b) to pay monies on the instructions of the Company." Trust Agreement, § 2. As to these obligations, plaintiffs have proffered no evidence contradicting the deposition testimony of Susan Proctor, which clearly establishes that Bankers Trust has fulfilled the obligations imposed by the terms of the trust agreement.

■■■ Thus, if any fiduciary duties have been breached by Revere, those duties must originate in ERISA itself. As a general matter, the duties imposed on a fiduciary by ERISA are limited to those related to the particular functions which that fiduciary is authorized to perform under the plan and applicable trust agreements or other controlling documents. *Brandt v. Grounds*, 687 F.2d 895, 3 E.B.C. 1780, 1782 (7th Cir.1982).[5] Because the sole duties of Bankers Trust under the trust agreement relate to the custody and investment of Plan assets, its fiduciary responsibilities relate only to those functions. Section 1104(a)(1) is not to the contrary. It specifies that

> Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary *shall discharge his duties with respect to a plan* solely in the interest of the participants and beneficiaries and
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of like character and with like aims;

> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

29 U.S.C. § 1104(a)(1) (emphasis supplied). Thus, although Section 1104(a)(1) delineates the standards to which a fiduciary shall be held in discharging his duties under the plan and applicable agreements, as a general rule it does not enlarge the basic scope of those duties as defined in the controlling documents.

In light of these principles, plaintiffs' reliance on *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592 (3rd Cir.1981), *cert. denied* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981), is misplaced. In *Rosen*, the Third Circuit held that "the fiduciary obligations of a pension fund trustee require that he notify the pensioner of his employer's failure to contribute to the fund as required by the pension agreement" within a reasonable time after the trustee acquires knowledge of the employer's default, and to bring suit or picket the employer to coerce payment of the contributions, 637 F.2d at 599–600. Plaintiffs argue that in this case Bankers Trust, as trustee, had the obligation under ERISA and the trust agreement to take action against Revere when Revere failed to contribute to the fund as required by the plan, and to notify the plan participants of this failure. *See* plaintiffs' March 11, 1985,

---

5. *See also* 29 C.F.R. § 2509.75–8 (FR–16), which provides, *inter alia:*

Question: Is a fiduciary who is not a named fiduciary with respect to an employee benefit plan personally liable for all phases of the management and administration of the plan? Answer: A fiduciary with respect to a plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in section 3(21)(A) of the Act. The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions which he or she performs with respect to a plan.

Brief in Opposition to Defendant's Motion for Summary Judgment at 11–12.

This Court is not entirely convinced that the principle of *Rosen* applies fully to the facts of the case *sub judice*. *Rosen* involved a jointly administered multi-employer pension trust maintained pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). *Rosen*, 637 F.2d at 594 n. 1. In that situation, the trustee apparently participated in the administration of the plan itself and had duties far in excess of merely holding and investing fund assets. *See Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 494 F.Supp. 521, 523–24 (trustees responsible for determining employee eligibility, etc.). *See also* 29 U.S.C. § 1002(16)A(ii) and B(iii). The duties of a plan administrator involve fiduciary responsibilities not shared by a mere trustee of assets. Thus, despite its casual use of the term "trustee", the *Rosen* court arguably held only that a trustee with *administrative* duties related to a pension plan has an obligation to monitor the adequacy of an employer's contributions to the plan and to take steps to protect the interests of particular beneficiaries when contributions appear inadequate. Indeed, the *Rosen* court said as much when it noted that the trustee's "duty originates in the pension agreement" at issue in the particular case. 637 F.2d at 599.[6]

■ In the case *sub judice*, the obligations of Bankers Trust are much narrower under the applicable agreements than were the apparent obligations of the trustee in *Rosen*. Those obligations of Bankers Trust were set forth in the trust agreement which provides in relevant part:

*Section 2.* It shall be the duty of the Trustee (a) to hold, to invest, and to reinvest the Trust Fund and (b) to pay moneys on the instructions of the Company, including payments to any checking account or accounts which may be established by any bank or banks for the purpose of drawing checks in payment of benefits under the Plan. Such instructions need not specify the application to be made of money so ordered, and the Trustee shall not be responsible in any way respecting such application or for the administration of the Plan. The Trustee shall be under no duty to enforce payment of any contribution and shall not be responsible for the adequacy of the Trust Fund to meet and discharge the liabilities of the plan.

Trust Agreement, § 2. This agreement clearly shows that Bankers Trust was responsible only for the custody and investment of the plan assets, and had no duty to supervise or participate in the administration of the plan, to determine eligible participants, to evaluate the adequacy of trust assets, or to calculate benefits due particular participants at any given time. Such a division of fiduciary functions is not inconsistent with ERISA. Indeed, ERISA implicitly (if not explicitly) recognizes the distinction. 29 U.S.C. § 1102(a) provides for a named fiduciary responsible for the "operation and administration of the plan." 29 U.S.C. § 1103(a) provides for the separate and distinct function of managing and controlling plan assets. While the different functions may be served by the same body, they may also be served by different persons or entities whose responsibilities are appropriately limited. So long as no specific provision of ERISA mandates otherwise, this division of authority worked out by the parties determines the duties of the various fiduciaries. *See Blackmar v. Lichtenstein*, 603 F.2d 1306 (9th Cir.1983). *Compare* 29 U.S.C. § 1104(a)(1)(D). In light of the obvious differences in the functions and authority of the "trustees" in *Rosen* as compared with the trustee in the case *sub*

---

**6.** That the *Rosen* holding was premised upon the administrative functions of the trustee in question is also supported by the *Rosen* court's reliance on *Aitken v. I.P. & GCU-Employer Retirement Fund*, 604 F.2d 1261 (9th Cir.1979), and

*Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir.1976), both of which were cases involving union trustees with substantial administrative duties under the terms of particular labor union pension plans.

*judice,* the duties enunciated by the *Rosen* court are not necessarily applicable here.[7]

■ This does not necessarily mean that a custodial trustee such as Bankers Trust will never have a duty to notify the plan participants of the cessation of contributions by an employer. If an employer fails to make contributions to an ERISA plan trust fund as required by applicable documents or instruments governing the plan, this may (in certain circumstances) constitute a breach of fiduciary duty by the employer. *See* 29 U.S.C. §§ 1002(21), 1102(a)(1), and 1104(a)(1). If so, the custodial trustee will be liable under 29 U.S.C. § 1105 for the breach of fiduciary responsibility by his co-fiduciary if, among other things, "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(3). *Cf. Aronson v. Servus Rubber Division of Chromalloy,* 566 F.Supp. 1545, 1556 (D.Mass.1983), *judgment vacated* 730 F.2d 12 (1st Cir.1984), *cert. denied* — U.S. —, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984). In certain circumstances, the reasonable remedial efforts required of a custodial trustee in this situation might arguably consist of or include notification of plan participants. Plaintiffs rely on this theory as well as upon *Rosen* in seeking to hold Bankers Trust liable for Revere's failure to contribute to the trust fund.[8]

■ In the instant case, the Court need not decide the validity of *Rosen* nor its applicability to the present facts. Whether analyzed in terms of the duty enunciated in *Rosen* or in terms of Section 1105(a)(3), the plaintiffs have not demonstrated a factual basis for holding Bankers Trust liable for failing to notify them or take other remedial action in the circumstances of this case. The record reflects without contradiction that Bankers Trust did not become aware of Revere's intention to declare bankruptcy and cease making contributions under the plan until at or about the time the bankruptcy petition was filed, and that plaintiffs, through their Union, received notice from Revere at or about the same time. *See* Deposition of Susan Proctor at 10, 51–56; Deposition of Carl Statum at 79–89. It is uncontroverted that up until that time, Revere paid all benefits due plaintiffs under the terms of the SUB Plan. Therefore, even assuming that the cessation of contributions by Revere constituted a breach of Revere's fiduciary duties, a proposition which is far from clear in light of Revere's bankruptcy and the other circumstances of this case, no causal connection has been demonstrated between any failure by Bankers Trust to notify the plaintiffs and

---

**7.** Indeed, in light of the limited functions of Bankers Trust under the trust agreement, it is doubtful that Bankers Trust had available to it on a regular basis sufficient information to enable it to police Revere's compliance with the terms of the plan or notify individual participants of the cessation of contributions. Certainly the present record does not demonstrate that such information was available to Bankers Trust. In *Rosen,* by contrast, an implicit factor in the court's analysis was that the administrative "trustee" had available to it in the regular course of its administrative duties sufficient information to enable the "trustee" to effectively monitor the adequacy of an employer's contributions to the plan to meet the plan's obligations to each particular employee, and to notify individual participants if contributions in their behalf were inadequate. *See Rosen,* 637 F.2d at 599, n. 10. This lends further support to the Court's conclusion that the principle of *Rosen* may not apply to the facts of this case. In any event, it should be noted that at least one appellate court has refused to adopt the rule enunciated in *Rosen,* even with regard to "trustees" having substantial responsibility for administration of a plan. *See Laborers Health & Welfare Trust Fund v. Kaufman & Broad,* 707 F.2d 412 (9th Cir.1983).

**8.** The *Rosen* court apparently relied upon principles gleaned from 29 U.S.C. § 1104 and the common law of trusts—rather than 29 U.S.C. § 1105(a)(3)—in defining the duty of the particular "trustees" to notify plan participants of the employer's failure to contribute to the plan. *See Rosen,* 637 F.2d at 599–600, n. 11. The practical difference between the two doctrines is that under § 1105(a)(3), the trustee's duty to take remedial action arises only when the trustee discovers that a co-fiduciary has taken action which amounts to a *breach of fiduciary duty,* whereas under *Rosen,* certain types of trustees would apparently have a duty to notify participants of any action by an employer jeopardizing a participant's eligibility for benefits, regardless of whether the action of the employer amounted to a breach of fiduciary duty.

536

any damage they have sustained as a result of Revere's alleged breach. Nor has it been demonstrated that Bankers Trust could have taken *any* effective action to remedy the breach or to protect the plaintiffs, given the fact that Bankers Trust did not learn of the cessation of contributions in time to take action before Revere filed bankruptcy.[9]

The plaintiffs have not disputed the fact that benefit payments were properly suspended once the petition was filed, pursuant to the provisions of the Bankruptcy Code. Clearly, notice to the plaintiffs thereafter would have been futile except insofar as it enabled plaintiffs to prosecute a claim in the bankruptcy court. Since the plaintiffs received sufficient notice through their union to ensure that their claims were in fact presented to the bankruptcy court, there is no showing on the record that any breach of a duty to notify on the part of Bankers Trust could possibly have harmed the plaintiffs. In the absence of a showing that the breach of duty by Bankers Trust— if indeed there was a breach of duty at all—proximately harmed the plaintiffs in some way, the plaintiffs are not entitled to recover. *Brandt v. Grounds,* 687 F.2d 895, 898 (7th Cir.1982) (causal connection required between fiduciary's breach of duty and plaintiff's loss). *Accord,* 29 U.S.C. § 1109.

In short, plaintiffs have adduced no evidence of any breaches of fiduciary duty committed by Bankers Trust; no evidence that Bankers Trust acted improperly in refunding contributions made by Revere; and no evidence that Bankers Trust knew of any breach of fiduciary duty by Revere prior to the cessation of contributions and Revere's simultaneous declaration of bankruptcy. In view of the record, it appears that plaintiffs, who are prevented from recovering the benefits due them from Revere because of the bankruptcy proceed-

ings, are in effect simply seeking to recover from Bankers Trust as a surety for the contractual indebtedness of Revere. Neither ERISA nor the trust agreement provides a basis for such liability.

Having considered the motion for summary judgment in light of the record in this case and the submissions of the parties, the Court concludes that there exists no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. An order will be entered dismissing this case in its entirety.

---

**9.** Clearly Bankers Trust cannot be held liable for failing to take action to remedy any breach of fiduciary duty by Revere prior to acquiring knowledge of such a breach. *Cf. Davidson v. Cook,* 567 F.Supp. 225, 237 (E.D.Va.1983), *affirmed* 734 F.2d 10 (4th Cir.1984), *cert. denied*

—— U.S. ——, 105 S.Ct. 275, 83 L.Ed.2d 211 (1984). *Compare Rosen,* 637 F.2d at 600 ("trustee" required to notify beneficiaries of actions of employer jeopardizing their eligibility "within a reasonable time after [trustee] acquires knowledge" of such facts).