803 F.2d 718
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CARPENTERS' PENSION TRUST FUND DETROIT & VICINITY, et al.,
Plaintiffs-Appellees
v.
LAMINATE CREATIONS, et al. Defendants
MICHAEL D. LOWN; EFFIE M. LOWN, Defendants-Appellants.
 No. 85-1707
 United States Court of Appeals, Sixth Circuit.
 Sept. 4, 1986.
 
 Before: KEITH and NELSON, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Effie M. Lown and Michael D. Lown appeal from a judgment of the district court in favor of plaintiff trust funds on their complaint alleging a conversion under Michigan law of vacation payments owed to the funds. For the reasons that follow, we reverse.
 
 I.
 
 2
 On November 25, 1981, Carpenters' Pension Trust Fund, Carpenters' Vacation and Holiday Trust Fund, Detroit Carpenters' Health and Welfare Fund, and Detroit Carpenters' Joint Apprenticeship and Training Trust Fund, filed a complaint against Laminate Creations, Inc., Quality Sales & Service, Inc., Effie M. Lown, Michael D. Lown, and Gaylord M. Speaker. On April 8, 1983, plaintiffs filed an amended complaint, adding as a defendant, Laminate Innovations, Inc. In Count I, plaintiffs alleged that defendants had breached the collective bargaining agreement between defendants and the Carpenters District Council of Detroit, Wayne, Oakland and Macomb Counties and Vicinity, United Brotherhood of Carpenters and Joiners of America in violation of 29 U.S.C. Secs. 185, 1132 for failure to pay fringe benefits totalling $27,825.83. In Count II, the plaintiffs alleged that defendants by virtue of the Michigan Builders Contract Fund Act, Mich. Comp. Laws Ann. Sec. 570.151, were required to hold certain revenues in trust for the laborers, and that the failure to do so constituted conversion. In Count III, the plaintiffs alleged conversion with respect to all of the monies owed by defendants and not properly paid. On April 21, the defendants answered the amended complaint asserting that the individual defendants were merely employees of the corporate defendants, that Laminate Creations and Quality Sales were out of business and their assets seized by the Internal Revenue Service, and that Laminate Innovations had no connection with the other corporate defendants. Laminate Creations and Quality Sales admitted liability on Count I. With respect to Counts II and III, the individual defendants denied the allegations of the complaint.
 
 
 3
 Stipulations of the parties indicate that Michael Lown was president and sole shareholder of Quality Sales and Laminate Creations and that Effie Lown was the secretary-treasurer. Laminate Creations and Quality Sales ceased operating on February 12, 1982, and an audit revealed that $8,062.23 was owed to the plaintiffs for unpaid vacation benefits. On February 12, 1982, Laminate Innovations was incorporated with James Lown as president and sole shareholder and Michael Lown as resident agent. James and Effie are married and are the parents of Michael. Quality Sales and Laminate Creations agreed to entry of judgment of $27,825.83 plus interest against them, and a judgment of $42,763.09 entered on February 19, 1985.
 
 
 4
 A bench trial was held on July 25, 1985 at which the following evidence was received. Edward Diroff, audit superintendent for TIC International Corp., testified that eleven percent of an employee's base wages is paid into the Carpenters' Vacation Fund. The vacation pay is added to an employee's base pay to calculate his gross pay from which taxes are deducted. Payments are made to the Carpenters' Vacation Fund monthly. In this case, Laminate Creations and Quality Sales on paper deducted the vacation pay from gross wages but never forwarded such to the Vacation Fund.
 
 
 5
 Effie Lown testified that she "ran the corporation" and "[c]ontrolled the financing." "I disbursed the money as I saw fit. I had control of the money. I helped some in supervising the men in the installation. My contract was with them. I did the office work. I did practically everything." Union fringe benefits "were set up as a liability and reports were turned in to the union of what we owed even when we didn't pay."
 
 
 6
 On July 31, 1985, the district court entered findings of fact and conclusions of law. The court found that "[v]acation pay trust fund payments were shown as income on the paychecks of individual employees of Laminate Creations and Q.S.S.," and "[t]axes were deducted from vacation payments, but monies were not transferred to the vacation fund." The court held:
 
 
 7
 [T]he monies were includable as income to the employees and deductions were shown on individual employee paychecks for the vacation fund payments. No payments were made by the employer to the vacation fund, rather it appears the money was diverted for other corporate purposes. The Court concludes that the taking of these wages was the assertion of dominion over a specific identifiable fund and therefore constitutes conversion under the laws of the State of Michigan . . . . Further, the court is satisfied that in the present case there was an obligation to pay specific funds to the employees and not a mere debt or chose in action.
 
 
 8
 The court entered a judgment of $8,062.23 jointly and severally against Michael and Effie, who now appeal from the judgment of the district court.
 
 II.
 
 9
 Appellants argue that an action for conversion cannot be properly maintained because there is no evidence that defendants converted specific identifiable funds.[1] It is a settled principle of Michigan tort law that "an action for conversion of money is not maintainable unless there is an obligation on the part of the defendant to return or apply the specific money entrusted to his care." People v. Christenson, 412 Mich. 81, 91 (1981) (Moody, J., concurring); Anderson v. Reeve, 352 Mich. 65, 70-71 (1958); Larsen v. Stiller, 344 Mich. 279, 289 (1955); Garras v. Bekiares, 315 Mich. 141, 147 (1946); Thrift v. Haner, 286 Mich. 495 (1938). "Though money is property which it is often difficult to identify, it is well settled that an action of trover will lie for its conversion when such identification is possible, and there is an obligation to deliver the specific money in question." Garras, 315 Mich.141. See Warren Tool Co. v. Stephenson, 11 Mich. App. 274 (1968) ("where there is no duty to pay the plaintiff the specific moneys collected, a suit for conversion may not be maintained"). See also Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 732 F.2d 859, 862 (11th Cir. 1984); Lettinga v. Agristor Credit Corp., 686 F.2d 442, 448 (6th Cir. 1982) ("to maintain a cause of action for conversion, an interest in specific, identifiable personalty must be pleaded and proved"); Jensen v. State Bank of Allison, 518 F.2d 1, 5 (8th Cir. 1975) ("As a general rule there can be no conversion of an ordinary debt.").
 
 
 10
 In this case there is no evidence, and the district court did not find, that any money was identified to the Vacation Fund. The corporation simply kept records of the amount owed to the Fund, but there is no evidence that specified monies which might be converted existed. Plaintiffs' claim that, when money came into the corporation, defendants paid other bills first before placing the money in the Vacation Fund is insufficient to establish conversion. There is no evidence that defendants took money that was in the Fund and used it to pay other bills. Because of the corporation's poor financial condition, no sum of money was ever actually credited to the Fund. Plaintiffs' remedy is an action for breach of contract in failing to pay the money that the collective bargaining agreement required be paid.
 
 
 11
 Accordingly, the judgment of the district court is REVERSED.
 
 
 
 [1]
 Although the parties have not raised the issue, courts frequently hold that ERISA preempts state common law actions for conversion. Justice v. Bankers Trust Co., 607 F. Supp. 527, 532 (N.D. Ala. 1985); Folz v. Marriott Corp., 594 F. Supp. 1007, 1020 (W.D. Mo. 1984); District 65, UAW v. Harper & Row, Publishers, Inc., 576 F. Supp. 1468, 1487 (S.D. N.Y. 1983)