# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v ARMSTRONG

Docket No. 165233. Argued on application for leave to appeal September 24, 2024. Decided April 2, 2025. Opinion of the Court and dissenting opinion as amended June 3, 2025, by order on motion for rehearing. ___ Mich ___ (2025).

Jeffery S. Armstrong was charged in the Wayne Circuit Court with carrying a concealed weapon, MCL 750.227; being a felon in possession of a firearm, MCL 750.224f; and with possession of a firearm during the commission of a felony, MCL 750.227b, after the police discovered a handgun under the passenger seat of a vehicle in which defendant was sitting. Corporal Treva Eaton claimed that she approached the vehicle, which was parked on a street, because she smelled marijuana emanating from it. Defendant moved to suppress the introduction of the gun as evidence, arguing that the gun was the fruit of a search that violated the Fourth Amendment of the United States Constitution. The prosecution responded that the smell of marijuana gave the police sufficient probable cause to search the vehicle under *People v Kazmierczak*, 461 Mich 411 (2000), or that the officers lawfully observed the gun in plain view during an investigatory stop pursuant to *Terry v Ohio*, 392 US 1 (1968). The court, Noah P. Hood, J., ruled that defendant was seized when officers surrounded the vehicle in which he was a passenger and that the officers were therefore required to have probable cause before ordering him out of the vehicle. Next, the trial court concluded that the smell of marijuana, standing alone, did not establish probable cause to search or justify the removal of defendant from the vehicle. The trial court also ruled that the plain-view exception to the warrant requirement did not apply. Accordingly, the trial court granted defendant's motion to suppress and dismissed the case. The prosecution appealed. The Court of Appeals, GLEICHER, C.J., and SERVITTO and YATES, JJ., affirmed, holding that the rule from *Kazmierczak* was superseded by the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., because, given that the MRTMA generally decriminalized the adult use of marijuana, the smell of marijuana is no longer necessarily indicative of unlawful activity. The panel further concluded that the trial court did not clearly err by finding that the gun was not discovered in plain view. Accordingly, the Court of Appeals held that the trial court properly granted defendant's motion to suppress evidence and appropriately dismissed the charges against defendant. 344 Mich App 286 (2022). The prosecution sought leave to appeal in the Supreme Court, which ordered oral argument on the application. 513 Mich 892 (2023).

In an opinion by Justice CAVANAGH, joined by Chief Justice CLEMENT and Justices BERNSTEIN, WELCH, and BOLDEN, the Supreme Court *held*:

The *Kazmierczak* rule that the smell of marijuana alone is sufficient to support a finding of probable cause to believe a crime was being committed is no longer good law in light of the MRTMA. Instead, the appropriate rule is that the smell of marijuana is one factor that may play a role in the probable-cause determination. Because the officers in this case lacked probable cause, the automobile exception to the warrant requirement did not apply. Moreover, even if the smell of marijuana gave the officers reasonable suspicion to detain and investigate defendant, the trial court did not clearly err when it concluded that the gun was discovered during a search based on the smell of burnt marijuana, not because it was seized while in plain view. A warrantless search must be based on probable cause, and the smell of marijuana is insufficient to support probable cause. Accordingly, the Court of Appeals correctly affirmed the trial court's suppression order and dismissal of the charges.

1. A search is constitutionally reasonable where the police possess a warrant or the search falls within one of the well-established exceptions to the warrant requirement. In this case, the police relied on the automobile exception, which allows the police to conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe it contains contraband, and on *Kazmierczak*, which held that the smell of marijuana alone supplied probable cause in this context. When *Kazmierczak* was decided in 2000, Michigan law criminalized the possession, use, and transportation of marijuana without exception. Since then, the citizens of Michigan passed both the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., which authorized qualified patients to possess and use, and registered caregivers to cultivate and possess, marijuana for medicinal purposes, and also the MRTMA, the intent of which was to generally decriminalize the use and possession of marijuana in the state of Michigan. In light of these statutory changes, although certain conduct related to marijuana use is still prohibited, the smell of marijuana, standing alone, no longer constitutes probable cause sufficient to support a search for contraband. Because the alleged basis for the officers' search of the automobile in this case was the smell of marijuana standing alone, the search was not constitutional under the automobile exception to the warrant requirement.

2. The prosecution also argued that the officers performed a valid investigatory stop under *Terry* based on reasonable suspicion of criminal activity, during which the police seized the gun observed in plain view. Although reasonable suspicion requires a lesser showing than probable cause, it still entails something more than an inchoate or unparticularized suspicion or hunch, and it must be evaluated by considering the totality of the circumstances. The plain-view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent. The trial court did not err by ruling that defendant was seized when the vehicle he was seated in was surrounded by several police officers and that, at the moment he was seized, the justification for the seizure was only the smell of burnt marijuana. However, instead of considering whether the smell of burnt marijuana emanating from a parked vehicle was sufficient on its own to support a reasonable, articulable suspicion of criminal activity under *Terry*, the trial court erroneously concluded that probable cause was required to seize the occupants of the vehicle, and the Court of Appeals agreed. Thus, the lower courts erred by failing to consider whether the police

officers had reasonable suspicion of criminal activity that justified an investigatory *Terry* stop. However, it was not necessary to decide whether, in light of the enactment of the MRTMA and the overruling of *Kazmierczak*, the smell of marijuana provided the police officers with reasonable suspicion in this case. Assuming arguendo that Corporal Eaton had a reasonable suspicion of criminal activity at the moment she seized defendant and eventually asked him to exit the vehicle, the trial court concluded that the gun was discovered during a search, not because it was in plain view, and the Court of Appeals affirmed. The prosecution provided no compelling argument as to why the trial court's factual finding was clearly erroneous, and the trial court's findings of fact were consistent with the Supreme Court's review of the body camera footage. Because the trial court concluded that the gun at issue was discovered during a search, it follows that it cannot have been found in plain view. The plain-view doctrine is exclusively a seizure rationale, whereas a search must be based on probable cause. Because the smell of marijuana was insufficient to support probable cause for a search, the prosecution's alternative argument also failed.

Affirmed.

Justice ZAHRA, dissenting, stated that because the lower courts' failure to consider whether the handgun could have been discovered in plain view during a *Terry* stop left open the possibility that the smell of marijuana was not the only valid evidence supporting probable cause, the facts of this case, as presented, did not present an opportunity to revisit *Kazmierczak*. He noted that the majority opinion's deference to the trial court's finding that the handgun was discovered through a search, meaning that plain-view discovery of the handgun was impossible, reflected a failure to recognize that the trial court's finding was tainted by its erroneous belief that the police could not temporarily seize the vehicle and remove defendant unless they first had probable cause to search the vehicle. However, because not every use of marijuana is free from criminal liability post-MRTMA, the smell of burnt marijuana coming from an occupied vehicle on a public street might have by itself created reasonable suspicion of criminal activity that justified a *Terry* stop to investigate further. If so, the officers would have been able to order defendant out of the vehicle in the interest of officer safety, and the record suggests that Officer Hayley Genaw, who was standing next to the vehicle near Deputy Eaton, was able to see the handgun in plain view as defendant exited the vehicle. Further, because the lower courts applied an incorrect standard to the initial seizure, it was unknown whether the smell of marijuana was the only evidence supporting probable cause to search the vehicle. Thus, even if the handgun was discovered as part of a search, this case did not present a *Kazmierczak* scenario. Justice ZAHRA also disagreed with the majority's conclusion that *Kazmierczak* has no continuing application after the enactment of the MRTMA. He explained that *Kazmierczak*'s rule regarding the smell of marijuana relates only to probable cause for searches for contraband or evidence of a crime, not to seizures, including the temporary seizure of a vehicle and its occupants based on probable cause to believe that a civil infraction has occurred. For these reasons, he would have vacated the judgments of the lower courts and remanded to the trial court for consideration of whether additional evidence supported probable cause for a search and for a new ruling on the motion to suppress under a correct understanding of the law.

Justice THOMAS did not participate because the Court considered this case before she assumed office.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED April 2, 2025

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                          No. 165233

JEFFERY SCOTT ARMSTRONG,

     Defendant-Appellee.

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

CAVANAGH, J.

In this case we consider whether the people's enactment of the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., in 2018 superseded this Court's holding in *People v Kazmierczak*, 461 Mich 411, 413; 605 NW2d 667 (2000), that "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement." We agree with the Court of Appeals that *Kazmierczak*'s holding is

no longer good law in light of the passage of the MRTMA. Because the smell of marijuana was the only basis argued by the prosecutor in support of the search at issue conducted pursuant to the motor-vehicle exception, the gun discovered by law enforcement was not discovered during a valid search based on probable cause. To resolve this case, we must also consider whether the gun was found in plain view during an otherwise constitutional investigatory stop pursuant to *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and thus admissible under the plain-view exception to the warrant requirement. Assuming without deciding that the smell of marijuana provided police officers with reasonable suspicion to perform a lawful *Terry* stop, we hold that there is no clear error in the trial court's finding that the gun was not discovered in plain view. Accordingly, we hold that the trial court properly granted defendant's motion to suppress and we affirm the judgment of the Court of Appeals.

## I. FACTS & PROCEEDINGS

On October 8, 2020, several police officers were conducting parole compliance checks in the city of Detroit. During those checks, Corporal Treva Eaton observed a Jeep Cherokee parked on the side of the street and allegedly[1] smelled the scent of burnt marijuana coming from the vehicle as she drove by. Corporal Eaton parked her patrol vehicle and turned on her body camera. The video shows several uniformed police officers surround the vehicle and make contact with the vehicle's occupants. Defendant, Jeffery

---

[1] The trial court did not make any factual findings in regard to Corporal Eaton's credibility. We decline to make such credibility determinations.

2

Armstrong, was seated in the front passenger's seat and a woman was seated in the driver's seat.

Corporal Eaton approached the passenger side and began speaking with defendant. She asked defendant which house he lived in. Defendant said that he was just visiting the area. Corporal Eaton asked defendant how long he had "been smoking weed in the car." Defendant denied smoking marijuana in the car, stating that he had just got into the vehicle. Corporal Eaton also asked the driver if she was smoking marijuana in the car, which the driver denied. Corporal Eaton reiterated that she could smell marijuana. She asked defendant and the driver if they knew the man who was the subject of the officers' compliance check. After they indicated they did not know the man, Corporal Eaton asked defendant where he lived, and defendant pointed down the street. At that point, Corporal Eaton asked defendant to step out of the vehicle. She patted him down and handcuffed him. Another police officer, Officer Hayley Genaw, stepped between the open door and the passenger compartment and looked inside the vehicle.[2] According to her later written report, Officer Genaw recorded that she observed a black handgun under the front passenger seat as Corporal Eaton was removing defendant from the vehicle. Based on the body camera footage, however, the trial court determined that "the firearm was not visible until Armstrong had already been removed from the vehicle" and that Officer Genaw did not discover the gun until "she *searched* the vehicle, and under the front passenger seat." (Emphasis added.)

---

[2] As Corporal Eaton patted defendant down, her body camera fell to the ground. It appears that, in response, someone bent down and positioned the camera so that it was facing up toward the interaction occurring among defendant, Corporal Eaton, and Officer Genaw.

Defendant was arrested and charged with carrying a concealed weapon, MCL 750.227, being a felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.  Defendant moved to suppress the introduction of the gun as evidence, arguing that the gun was the fruit of a search that violated the Fourth Amendment of the United States Constitution.

After reviewing the evidence,[3] the trial court ruled that defendant was seized when officers surrounded the vehicle in which defendant was a passenger.  According to the trial court, the officers were, therefore, required to possess probable cause before ordering defendant out of the Jeep.  Next, the trial court concluded that the smell of marijuana, standing alone, did not establish probable cause to search or justify the removal of defendant from the vehicle.  The trial court also held that the plain-view exception to the warrant requirement did not apply.  The trial court, therefore, granted defendant's motion to suppress and dismissed the case.

The prosecution appealed, and the Court of Appeals affirmed.  *People v Armstrong*, 344 Mich App 286; 1 NW3d 299 (2022).  First, the Court of Appeals agreed that defendant was seized "even before Corporal Eaton ordered him out of the Jeep."  *Id*. at 296. Moreover, it found no clear error in the trial court's conclusion that Corporal Eaton based her decision to approach the Jeep solely on the smell of marijuana.  *Id*. at 297.  The Court of Appeals then considered whether the smell of marijuana "furnishes probable cause to

---

[3] As the Court of Appeals recognized, the record in this case is limited because the parties declined the court's invitation to hold an evidentiary hearing.  Accordingly, the trial court's findings were based on the body camera footage and some police report excerpts that were included in the briefing.  *People v Armstrong*, 344 Mich App 286, 291; 1 NW3d 299 (2022).

4

approach or seize a person without a warrant." *Id*. at 298. The panel concluded that the rule from *Kazmierczak* was superseded by the MRTMA because, given that the MRTMA generally decriminalized the adult use of marijuana, the smell of marijuana is no longer necessarily indicative of unlawful activity. *Id*. at 299. It explained that the smell of marijuana remains a potential factor in the probable-cause determination but is insufficient on its own to establish probable cause to support a warrantless search of a vehicle. *Id*. at 300. The Court of Appeals rejected the argument that factors in addition to the smell of marijuana, such as nervousness, inconsistent answers, and furtive movements, were sufficient to constitute probable cause because it reasoned that those additional circumstances arose only after defendant was unconstitutionally seized.[4] *Id*. at 301. Finally, the panel concluded that the trial court did not clearly err by finding that the gun was not in plain view. *Id*. Accordingly, the Court of Appeals held that the trial court properly granted defendant's motion to suppress and appropriately dismissed the charges against defendant. *Id*. at 304.

The prosecution sought leave to appeal in this Court, and we ordered oral argument on the application. *People v Armstrong*, 513 Mich 892 (2023).

II. STANDARD OF REVIEW & GENERAL FOURTH AMENDMENT PRINCIPLES

We review a trial court's findings of fact at a suppression hearing for clear error. *People v Hammerlund*, 504 Mich 442, 450; 939 NW2d 129 (2019). "Clear error exists if

---

[4] While the prosecution claimed that Corporal Eaton observed defendant lean down in his seat as she was approaching the vehicle, the Court of Appeals noted, and the prosecution conceded at oral argument in this Court, that this conduct was not captured on Corporal Eaton's body camera.

the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Our review of the application of Fourth Amendment principles is de novo. *Hammerlund*, 504 Mich at 451.

The Fourth Amendment of the United States Constitution guarantees the right of persons to be secure from unreasonable searches and seizures.[5] US Const, Am IV. "The touchstone of the Fourth Amendment is reasonableness." *Hammerlund*, 504 Mich at 451. "A warrantless search or seizure is presumed unconstitutional unless shown to be within one of several established exceptions." *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022). It is the government's burden to prove that an exception to the warrant requirement exists. *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975).

### III. DISCUSSION

In the trial court, the prosecution raised two distinct arguments in regard to the seizure of the gun at issue. First, the prosecution argued that the police officers had sufficient probable cause to search the vehicle without a warrant pursuant to the automobile exception based solely on the smell of marijuana. See *Kazmierczak*, 461 Mich at 426.[6]

---

[5] "Const 1963, art 1, § 11 has historically been interpreted coextensively with the Fourth Amendment, absent compelling reason to impose a different interpretation." *People v Lucynski*, 509 Mich 618, 634 n 6; 983 NW2d 827 (2022) (quotation marks and citation omitted). Defendant's motion to suppress was filed pursuant only to the Fourth Amendment and did not raise a state constitutional claim. Therefore, this opinion addresses only the Fourth Amendment.

[6] The prosecution has attempted to abandon this argument on appeal in this Court. It contends that the Court of Appeals erred by deciding the continuing vitality of *Kazmierczak* and that appellate courts should "not be in the practice of addressing and deciding issues irrelevant and unnecessary to the resolution of the case on appeal." However, in addition to the argument based on *Kazmierczak* raised in the trial court, the prosecution also argued

Second, the prosecution argued in the alternative—albeit in a somewhat unclear manner—that Corporal Eaton had reasonable suspicion of criminal activity when she asked defendant to exit the vehicle and that Corporal Eaton observed the handgun in plain view during a lawful stop.[7] See *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). On appeal, the prosecution more directly asserted that the gun at issue had been observed in plain view during a valid investigatory seizure justified by probable cause to believe that a civil infraction had occurred. We address these arguments in turn.[8]

---

in the Court of Appeals that the officers possessed probable cause to seize defendant to investigate a possible civil infraction, relying on the probable-cause standard discussed in *Kazmierczak*. See Plaintiff-Appellant's Brief on Appeal, filed June 2, 2022, p 16 ("In light of the fact that the smell of marijuana alone can establish probable cause, Officer Eaton had the authority to investigate further after she drove by defendant and noticed the distinct odor of burnt marijuana."). Given that the prosecution bears the burden of proving that an exception to the warrant requirement exists, *Reed*, 393 Mich at 362, the Court of Appeals reasonably addressed an argument that was specifically and repeatedly raised by the prosecution and decided by the lower courts. While the prosecution is free to make arguments in the alternative, we need not ignore issues deliberately raised in and decided by the lower courts (especially one resolved in a binding published decision) simply because the prosecution now wishes to pursue a different litigation strategy. See *Three Lakes Ass'n v Whiting*, 75 Mich App 564, 581; 255 NW2d 686 (1977) (noting that a litigant "may not shift ground on appeal . . . after being unsuccessful on the one presented in the trial court").

[7] The prosecution did not directly advance this argument in its response to defendant's motion to suppress in the trial court. At the hearing on the motion, however, the prosecution argued that when Corporal Eaton "was standing next to the vehicle, she could see the bottom of a gun on the floorboard of the vehicle," which gave her probable cause to search. The trial court later construed this as an argument that the gun was seized based on the plain-view doctrine.

[8] We would generally address the constitutionality of a seizure before the constitutionality of a search. However, a conclusion that *Kazmierczak* remains good law—i.e., that the smell of marijuana alone supports probable cause to search—would necessarily support a conclusion that the investigatory stop at issue was also constitutional under the lesser standard of reasonable suspicion. Accordingly, we address the *Kazmierczak* rule first.

7

## A. PROBABLE CAUSE

We first consider whether the gun at issue was discovered during a valid warrantless search of the vehicle pursuant to the automobile exception. A search is constitutionally reasonable where the police possess a warrant or the search falls within one of the well-established exceptions to the warrant requirement. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). There is no dispute that the police did not obtain a warrant before searching the vehicle in this case. Instead, the prosecution relied on the automobile exception to the warrant requirement. That exception provides that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996). Probable cause means that there is a " 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 417-418 (citation omitted).

In *Kazmierczak*, this Court considered whether the odor of marijuana, standing alone, constituted sufficient probable cause to support a search under the automobile exception. *Id*. at 413. In that case, the police officer who searched the defendant's car testified that he detected " 'a very strong smell of marijuana emanating from the vehicle' that was 'overpowering.' " *Id*. at 414. *Kazmierczak* held that "when a qualified person smells an odor sufficiently distinctive to identify contraband, the odor alone may provide probable cause to believe that contraband is present." *Id*. at 421. In such cases, the Court

---

Although the dissent clearly does not care for the order of our analysis, that does not render it legally erroneous or improper.

8

reiterated that "[p]robable cause can exist when the odor of marijuana is the *only* factor indicating the presence of contraband." *Id*. at 424 (emphasis added).

When *Kazmierczak* was decided in 2000, Michigan law criminalized the possession, use, and transportation of marijuana without exception. Since then, there have been significant changes to Michigan's marijuana laws. In 2008, the citizens of Michigan passed the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., which authorized qualified patients to possess and use, and registered caregivers to cultivate and possess, marijuana for medicinal purposes. See MCL 333.26424; see also *People v Anthony*, 327 Mich App 24, 45; 932 NW2d 202 (2019), overruled in part on other grounds by *People v Duff*, ___ Mich ___ (July 26, 2024) (Docket No. 163961). The passage of the MMMA created confusion over the continuing viability of the *Kazmierczak* rule. In *Anthony*, 327 Mich App at 45, for example, the defendant argued that in light of the MMMA the smell of marijuana alone no longer established probable cause to search a vehicle under the automobile exception. Although *Kazmierczak* remained binding on the lower courts, the *Anthony* panel reasoned that it had the "authority to consider not adhering to *Kazmierczak*'s holding if the MMMA changed the law and thereby undermined the basis for *Kazmierczak*." *Id*. at 44. That said, the panel did not believe that *Kazmierczak* had been sufficiently undermined to warrant straying from its holding because the MMMA only provided "limited license for qualifying patients to use marijuana . . . ." *Id*. at 45. And, relevant to that case, under the MMMA smoking marijuana in public remained illegal. *Id*. Therefore, "because [the] defendant used marijuana in his truck on a public street, the protections of the MMMA did not apply to [the] defendant and *Kazmierczak* applied with full force to supply probable cause for the officers to search his vehicle." *Id*. Thus, the

panel held that *Kazmierczak* remained good law where the smell of marijuana pointed directly to illegal activity, i.e., using marijuana in a public place. *Id*.

The Court of Appeals continued to apply *Kazmierczak* in *People v Moorman*, 331 Mich App 481, 486; 952 NW2d 597 (2020). Unlike in *Anthony*, the defendant in *Moorman* was legally allowed to possess marijuana as a registered caregiver under the MMMA and was suspected of *possessing* marijuana, not illegally *using* it, because of a strong odor of fresh marijuana emanating from his vehicle. *Id*. at 487. Like in *Anthony*, however, the panel in *Moorman* recognized that after enactment of the MMMA, there must exist additional facts to support the belief "that a suspect's actions, i.e., the use or possession of the marijuana, fall outside the protections of the MMMA." *Id*. at 490. Applying that rule in *Moorman*, the panel found it significant that the defendant lied to the police officer about possessing marijuana. *Id*. at 488. In other words, the Court of Appeals did not hold that the smell of marijuana, standing alone, was sufficient to establish probable cause; rather, the smell of marijuana in combination with the defendant's deception gave rise to probable cause that his possession of marijuana fell outside the protections of the MMMA. *Id*. at 490.

A sea change regarding the legality of marijuana occurred in 2018 when Michigan voters passed the MRTMA. The general intent of the MRTMA is to decriminalize the use and possession of marijuana in the state of Michigan. See MCL 333.27952 (stating the intent "to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older"). MCL 333.27955 provides a list of permissible acts for adults who are 21 years of age or older under the MRTMA, including possessing, using, purchasing, transporting, or processing 2.5 to 15 grams of marijuana. Those permitted acts

10

"are not grounds for seizing or forfeiting property, are not grounds for arrest, prosecution, or penalty in any manner, are not grounds for search or inspection, and are not grounds to deny any other right or privilege[.]" MCL 333.27955(1). Certain conduct is still prohibited, however, including "being in physical control of any motor vehicle . . . while under the influence of marihuana," MCL 333.27954(1)(a), "consuming marihuana in a public place," MCL 333.27954(1)(e), and "consuming marihuana while . . . being in physical control of any motor vehicle . . . or smoking marihuana within the passenger area of a vehicle upon a public way," MCL 333.27954(1)(g).

This appeal is the first time that this Court has had the opportunity to consider the continuing viability of the *Kazmierczak* rule following the passage of the MRTMA.[9] We

_____

[9] The dissent reasons that the facts of this case do not implicate *Kazmierczak* because the Court of Appeals and this Court may be "discounting other, nonmarijuana evidence that could have supported probable cause for a search." The problem with this position is that at no time throughout this litigation did the prosecution argue that a search was justified on the basis of probable cause supported by the smell of marijuana *and* additional factors. In its responsive brief in the trial court, the prosecution stated that the officers "smelled a strong odor of marijuana. *This alone* gave officers sufficient probable cause to search the vehicle." (Emphasis added). In subsequent filings on appeal, the prosecution has maintained that the gun was not discovered during a search at all. The dissent is correct that the Court of Appeals characterized the prosecution's argument in that court as anticipating the "middle-ground approach by contending that additional facts coupled with the smell of marijuana constituted probable cause to justify removing defendant from the Jeep and searching the vehicle without a warrant." *Armstrong*, 344 Mich App at 301. However, this was a mischaracterization by the panel. A review of the prosecution's briefing in the Court of Appeals demonstrates that these additional factors were cited not to justify a search of the vehicle but in an attempt to justify defendant's removal from the vehicle, which, it argued, led to the plain-view discovery. While the dissent's position is certainly not meritless—as will be discussed, the smell of marijuana coupled with additional factors that would support illegal use may support probable cause post-MRTMA—it is the *prosecutor*'s burden to justify a warrantless search. We do not "brush the other evidence under the rug"; we simply decline to make arguments not advanced by the prosecution.

11

agree with the Court of Appeals that in light of the voters' intent to legalize marijuana usage and possession, the smell of marijuana, standing alone, no longer constitutes probable cause sufficient to support a search for contraband.

As noted, when *Kazmierczak* was decided, all possession, use, and transportation of marijuana was a crime in Michigan. Accordingly, the smell of marijuana indicated that the *criminal* possession, use, or transportation of marijuana had occurred at some point. In other words, simply smelling marijuana indicated a "substantial chance of criminal activity . . . ." *Illinois v Gates*, 462 US 213, 243 n 13; 103 S Ct 2317; 76 L Ed 2d 527 (1983). In that context, a rule like the one announced in *Kazmierczak* was reasonable. But now that marijuana possession and use is generally legal, the odor of marijuana does not on its own supply a *substantial* basis for inferring a fair probability that contraband or evidence of illegal activity will be found in a particular place. *Id*. at 238. Instead, post-MRTMA, the smell of marijuana might just as likely indicate that the person is in possession of a legal amount of marijuana, recently used marijuana legally, or was simply in the presence of someone else who used marijuana.[10]

However, even under the MRTMA, marijuana possession and use are not legal for all people under all circumstances. For example, operating a motor vehicle under the

---

[10] Additionally, it is widely understood that marijuana gives off a "powerful smell that can linger on your clothes or in your car or house after smoking for several hours or more." Hodgman-Korth, *What Do Different Drugs Smell Like? A Guide to Drugs by Smell*, American Addiction Centers <https://americanaddictioncenters.org/identifying-drugs/smells-odors> (last accessed December 13, 2024) [https://perma.cc/2LWS-KKA3]. Accordingly, as defense counsel asserted at oral argument, unlike with the smell of alcohol, the smell of marijuana is not particularly probative of *who* is consuming marijuana or *how recently* marijuana has been consumed.

influence of marijuana remains a crime, see MCL 333.27954(1) and MCL 257.625(1), and smoking marijuana in public is a civil infraction, MCL 333.27965(1). Thus, although the smell of marijuana is no longer sufficiently indicative of the presence of contraband or illegal activity, that does not mean that the smell of marijuana is irrelevant to developing probable cause concerning illegal activity. *Dist of Columbia v Wesby*, 583 US 48, 61; 138 S Ct 577; 199 L Ed 2d 453 (2018) (explaining that the question is not whether particular conduct is "guilty" but whether a reasonable officer, considering all the surrounding circumstances, could conclude that there was a substantial chance of criminal activity). This general principle has already been recognized in cases such as *Anthony* and *Moorman* that considered the *Kazmierczak* rule after the MMMA was enacted. That is, these decisions already recognized that, given the legalization of marijuana under some circumstances, something more than the smell of marijuana alone is needed to support probable cause. This need for "something more" is now even more pronounced in light of the passage of the MRTMA.

We, therefore, agree with the Court of Appeals that " 'the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle' . . . ." *Armstrong*, 344 Mich App at 300, quoting *Commonwealth v Barr*, 266 A3d 25, 28 (Pa, 2021). Other relevant inculpatory facts might include, for example, an officer's observation of evidence suggesting intoxication or the presence of smoke. This rule is consistent with rules crafted in other states where marijuana has been decriminalized or legalized. See, e.g., *People v Zuniga*, 372 P3d 1052 (Co, 2016) (holding "that the odor of marijuana is relevant to the totality of the circumstances test and can

contribute to a probable cause determination"); *People v Redmond*, 2024 IL 129201, ¶ 54; 248 NE3d 1026 (2024) (holding that "the odor of burnt cannabis is a fact that should be considered when determining whether police have probable cause to search a vehicle, but the odor of burnt cannabis, standing alone without other inculpatory facts, does not provide probable cause to search a vehicle"); *State v Torgerson*, 995 NW2d 164, 174 (Minn, 2023) (holding that "the odor of marijuana is one of the circumstances in the totality of circumstances analysis that should be considered in determining if there is a 'fair probability' that contraband or evidence of a crime will be found in the location searched"). More importantly, this rule is consistent with the Fourth Amendment principle that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra v Illinois*, 444 US 85, 91; 100 S Ct 338; 62 L Ed 2d 238 (1979). The presence of other inculpatory facts that suggest not only the illegal use of marijuana but, importantly, the where, when, and who of that use, is critical to determining whether probable cause exists to support a search. We, therefore, hold that *Kazmierczak*'s rule that the smell of marijuana, standing alone, is sufficient to support a finding of probable cause under the automobile exception to the warrant requirement is no longer viable in light of the enactment of the MRTMA. As applied in the present case, because the alleged basis for the officers' search of the

14

automobile was the smell of marijuana standing alone,[11] the search was not constitutional under the automobile exception to the warrant requirement.[12]

## B. REASONABLE SUSPICION & PLAIN VIEW

Although the smell of marijuana is insufficient to supply probable cause for a warrantless search, the prosecution also argued that the officers performed a valid investigatory stop under *Terry*, 392 US 1. And, the prosecution contends, during this *Terry* stop, police officers observed the gun at issue in plain view and could, therefore, seize it pursuant to the plain-view doctrine.

"In order to be reasonable, an arrest must be justified by probable cause." *Hammerlund*, 504 Mich at 451. However, the police may briefly seize a person to investigate possible criminal behavior even though they lack the requisite probable cause to arrest, so long as the police possess a reasonable and particularized suspicion of criminal activity. *People v Prude*, 513 Mich 377, 387; 15 NW3d 249 (2024). This so-called "*Terry*

---

[11] Although this case concerns the alleged smell of *burnt* marijuana, we decline to make a further distinction between the smell of burnt and unburnt marijuana in this opinion. The record lacks information on whether and to what extent such a distinction exists and, if so, whether Corporal Eaton was sufficiently trained to identify the difference.

[12] In the trial court, defendant argued that the evidence should be excluded pursuant to the exclusionary rule, citing *Herring v United States*, 555 US 135; 129 S Ct 695; 172 L Ed 2d 496 (2009). In its response to the motion, the prosecution did not address the exclusionary rule. Even after the trial court suppressed the evidence, the prosecutor did not raise the issue of the good-faith exception. *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004). Only in the prosecution's application for leave to appeal in this Court did it briefly argue that suppression was inappropriate because the officers acted in reasonable reliance on *Kazmierczak*, citing *Davis v United States*, 564 US 229, 241; 131 S Ct 2419; 180 L Ed 2d 285 (2011). We decline to address the good-faith exception to the exclusionary rule in this case because the prosecution did not argue in the lower courts that the exception applied. See *People v Hamacher*, 432 Mich 157, 168; 438 NW2d 43 (1989).

15

stop" is a well-known exception to the warrant requirement. *Lucynski*, 509 Mich at 638. Although reasonable suspicion requires "a lesser showing than probable cause, it still entails something more than an inchoate or unparticularized suspicion or hunch . . . ." *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021) (quotation marks and citation omitted).

The plain-view doctrine "allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). "[P]robable cause is the level of suspicion required in the plain view context." *Id*. at 103. "A fundamental characteristic of the doctrine is that it is exclusively a seizure rationale. No searching, no matter how minimal, may be done under the auspices of the plain view doctrine." *Id*. at 101.

The trial court found that defendant was seized when the vehicle he was in was "surrounded on all sides and front and back by Corporal Eaton and Officers Genaw, Saad, Scott, and Kryzak"—in other words, that defendant was seized as soon as Corporal Eaton approached the passenger side of the vehicle and made contact with defendant. The trial court also found that Corporal Eaton approached the vehicle "solely on the basis that she smelled marijuana emanating from the vehicle." Like the Court of Appeals, we detect no clear error in this finding based on our review of the record. *Armstrong*, 344 Mich App at 301.[13] In other words, we agree that defendant was seized when the vehicle he was seated

---

[13] The prosecution also does not dispute this factual finding in this Court.

16

in was surrounded by several police officers and that, at the moment he was seized, the justification for the seizure was only the smell of burnt marijuana.

Accordingly, the pertinent question is whether the police officers possessed reasonable suspicion of criminal activity when defendant was initially seized. *Lucynski*, 509 Mich at 626. Unfortunately, instead of considering whether the smell of burnt marijuana emanating from a parked vehicle was sufficient on its own to support a reasonable, articulable suspicion of criminal activity,[14] the trial court concluded that probable cause was required to seize the occupants of the vehicle. On appeal, the Court of Appeals affirmed the trial court's finding that "the officers seized defendant even before Corporal Eaton ordered him out of the Jeep," and it echoed the trial court's incorrect analysis and conclusion that the seizure was illegal because police officers lacked probable cause. *Armstrong*, 344 Mich App at 296, 304. In sum, the lower courts erred by failing to consider whether the police officers had reasonable suspicion of criminal activity that justified an investigatory *Terry* stop.

In this Court, the prosecution asserts that "[s]ince the use of marijuana in public or the consumption of marijuana while in physical control of a motor vehicle is still, even after enactment of MRTMA, prohibited by law, the smell of burnt marijuana is sufficiently distinctive to identify criminal behavior." The prosecution argues, therefore, that "[t]he

---

[14] We note that in this Court, defendant and some amici curiae have argued that a *Terry* stop is only constitutionally reasonable if it is based on reasonable suspicion of *criminal* activity—in other words, that reasonable suspicion of a *civil* infraction is insufficient to support a *Terry* stop. See, e.g., *United States v Collazo*, 818 F3d 247, 253 (CA 6, 2016); *Commonwealth v Cruz*, 459 Mass 459, 470; 945 NE2d 899 (Pa, 2011). This Court has never directly addressed this issue and, because it is unnecessary to our resolution of this appeal, we leave that question for another day.

17

smell of burnt marijuana emanating from the Jeep, in itself, provided [Corporal] Eaton with reasonable suspicion that possible criminal behavior was occurring and that suspicion allowed the officer to briefly detain the occupants of the Jeep for the purpose of verifying or dispelling the suspicion that narcotic laws were being violated." Put simply, the prosecution argues that the smell of marijuana provided law enforcement with reasonable suspicion to perform an investigatory *Terry* stop.

We need not decide whether, in light of the enactment of MRTMA and our decision today overruling *Kazmierczak*, the smell of marijuana provided the police officers with reasonable suspicion in this case.[15] Assuming arguendo that Corporal Eaton possessed reasonable suspicion of criminal activity at the moment she seized defendant and eventually asked him to exit the vehicle,[16] the trial court concluded that the gun was discovered during a search, not because it was in plain view.[17] The Court of Appeals

---

[15] Like the probable-cause determination, when determining whether reasonable suspicion of criminal activity exists, courts must look at the totality of "all the facts and circumstances" in a particular case. *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001) (quotation marks and citation omitted).

[16] "Once the police make a valid investigative stop, the insistence by the police that the occupants remove themselves from the vehicle is not a serious intrusion upon the sanctity of the person . . . ." *People v Armendarez*, 188 Mich App 61, 70; 468 NW2d 893 (1991); see also *Pennsylvania v Mimms*, 434 US 106, 111; 98 S Ct 330; 54 L Ed 2d 331 (1977).

[17] The trial court found, for example, that "Corporal Eaton and [Officer] Genaw did not discover any contraband *prior to a search* of Armstrong's person and the vehicle." (Emphasis added.) Similarly, the trial court stated in its findings of fact that "[Officer] Genaw discovered the handgun . . . when she *searched* the vehicle, and *under* the front passenger seat." (Emphasis added.) It further stated that "the gun was . . . not in plain view *before the search took place*." (Emphasis added.) Finally, the trial court concluded that Corporal Eaton "did not see the handgun in plain view, but rather, discovered it . . . when [Officer] Genaw *searched* the vehicle." (Emphasis added.) The dissent assumes that because the trial court applied the wrong standard of suspicion (probable cause), the trial court must have also erroneously repeatedly used the term "search" to

18

affirmed, concluding that "based on the limited factual record to which the parties stipulated in the trial court, no finding of fact made by the trial court is clearly erroneous." *Armstrong*, 344 Mich App at 304. The prosecution provides no compelling argument as to why the trial court's factual finding was clearly erroneous, simply asserting that the trial court erred.[18] The trial court's findings of fact are, at minimum, consistent with our review of the body camera footage. We are, therefore, not left with "a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).[19]

---

describe what occurred. We are not similarly convinced that the trial court's conclusion that defendant was illegally seized necessarily tainted the trial court's finding that the gun was discovered during a search and not in plain view after what it viewed as an illegal seizure.

[18] The prosecution argues that the trial court "failed to adequately discuss in its written order . . . what information [Officer] Genaw possessed prior to entering the vehicle and recovering the firearm . . . ." However, it is unclear how the trial court would be able to glean this information and consider its credibility based solely on Corporal Eaton's body camera footage and the snippets of the police report contained in the motion to suppress. It is the prosecution's burden to make a sufficient factual record to establish that an exception to the warrant requirement exists. *Reed*, 393 Mich at 362. Despite the trial court's invitation, the prosecution chose not to request an evidentiary hearing in which the law enforcement officers in this case could have testified about exactly what they saw and when. Because the prosecution declined such a hearing, the trial court was forced to make factual findings based on little more than stray comments in the body camera footage and a post hoc police report. As the appellate prosecutor admitted at oral argument in this Court, an evidentiary hearing would have put the prosecution "in a much better position." On this limited record, the trial court committed no clear error in its factual findings.

[19] The dissent provides its own interpretation of the evidence and notes that the record suggests that the gun may have been observed in plain view. Whether Officer Genaw "would have had an unobstructed view" into the car and whether the nature of the gun "would plausibly have been apparent" was, again, something that could have explored and fleshed out on the record. The dissent's differing interpretation of the video footage is

19

Because the trial court concluded that the gun at issue was discovered during a search, it follows that it cannot have been found in plain view. The plain-view doctrine is "exclusively a seizure rationale." *Champion*, 452 Mich at 101. A search must be based on probable cause. However, as previously discussed, the smell of marijuana was insufficient to support probable cause for a search. Accordingly, the prosecution's alternative argument also fails.

## IV. CONCLUSION

We agree with the Court of Appeals that the *Kazmierczak* rule is no longer good law in light of the MRTMA. Instead of a rule that the smell of marijuana alone may be sufficient to support a finding of probable cause, the appropriate rule is that the smell of marijuana is one factor that may play a role in the probable-cause determination. Because the officers in this case lacked probable cause, the automobile exception to the warrant requirement did not apply. Moreover, even assuming that the police officers possessed reasonable suspicion to detain and investigate defendant based on the smell of marijuana, the trial court did not clearly err when it held that the gun was discovered during a search based on the smell of burnt marijuana, not because it was seized while in plain view. A warrantless search must be based on probable cause and the smell of marijuana is insufficient to support probable cause. Accordingly, we agree with the Court of Appeals

---

insufficient to constitute clear error or require a remand. In the absence of clear error, this Court accepts a trial court's factual findings.

and affirm its judgment upholding the trial court's suppression order and dismissal of the charges.

> Megan K. Cavanagh
> Elizabeth T. Clement
> Richard H. Bernstein
> Elizabeth M. Welch
> Kyra H. Bolden

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                          No. 165233

JEFFERY SCOTT ARMSTRONG,

      Defendant-Appellee.

_____

ZAHRA, J. (*dissenting*).

This case requires us to consider whether the trial court erred by granting defendant's motion to suppress evidence of an illegal handgun that the police found beneath his car seat. The majority opinion defers to the trial court's finding that the handgun was discovered through a search, meaning that plain-view discovery of the handgun was impossible. But the majority for all intents and purposes fails to recognize that the trial court's finding that a search occurred was tainted by its erroneous belief that the police could not temporarily seize the vehicle and remove defendant unless they first had probable cause to search the vehicle. The Court of Appeals similarly erred when it affirmed the trial court's order. Because the challenged evidence might be admissible on the narrower ground that it was discovered in plain view during an investigatory *Terry*[1] stop, I would not stretch, as the majority opinion does, to address the continuing viability

_____

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

of the rule from *People v Kazmierczak* that the smell of marijuana alone can justify the warrantless search of a vehicle.[2]

Further, because the lower courts held that an incorrect standard was applicable to the initial seizure, we do not know whether the smell of marijuana was the only evidence supporting probable cause to search the vehicle. Thus, even if the handgun was discovered as part of a search, this case does not present a *Kazmierczak* scenario, making this appeal an inappropriate vehicle through which to revisit *Kazmierczak*. This Court should not address *Kazmierczak* but should instead remand for consideration of whether additional evidence supported probable cause for a search. At any rate, I disagree with the majority's conclusion that *Kazmierczak* has no continuing application after the enactment of the Michigan Regulation and Taxation of Marihuana Act (MRTMA).[3] Accordingly, I dissent.

## I. BACKGROUND

This case comes to us on interlocutory appeal by the prosecution following a trial court order suppressing the prosecution's key evidence—an illegal handgun found under defendant's car seat. Five officers of the Detroit Police Department were assisting with a parolee home-compliance check in a residential area of Detroit when they observed a Jeep parked in the street. Defendant was sitting in the passenger's seat, and a woman was sitting in the driver's seat. One of the officers, Corporal Treva Eaton, reportedly smelled burnt marijuana that she believed was coming from the Jeep. The officers approached and surrounded the Jeep as one officer spoke with the driver. Corporal Eaton spoke with

---

[2] *People v Kazmierczak*, 461 Mich 411, 420-422; 605 NW2d 667 (2000).

[3] MCL 333.27951 *et seq*.

2

defendant through the open passenger-side window. She later stated that, in addition to the smell of marijuana, other evidence suggested illicit activity. Defendant exhibited suspicious behaviors, including that his hands were shaking when she talked to him and that, as Eaton approached the car, she saw defendant "lean to the right toward the door, and his right shoulder dip to the front" before he sat up again.

Most of the interaction (unfortunately, not all) was captured on Corporal Eaton's body camera. For about 50 seconds, Corporal Eaton spoke with defendant, asking, among other things, how long he had been smoking marijuana in the car. Defendant denied having smoked marijuana. Corporal Eaton then asked defendant to step out of the vehicle. As defendant opened the door and exited, Corporal Eaton had him turn around and put his hands on the Jeep's roof. The video shows Officer Hayley Genaw stepping forward and stopping next to the still-open car door.

Exactly what happened immediately after this is unclear because Corporal Eaton's camera fell from her body onto the ground, obstructing the view for about seven seconds. When defendant and the officers came back into the camera's view, Corporal Eaton and Officer Genaw were placing defendant in handcuffs. According to her police report, Officer Genaw was standing beside the Jeep and observed the handgun underneath defendant's seat as defendant exited the car.

Defendant did not have a concealed pistol license (CPL). He was arrested and charged with offenses relating to the illegal concealed possession of a handgun. He moved to suppress the evidence of the firearm found under his seat, arguing that the police discovered it after unlawfully seizing him in violation of the Fourth Amendment. The prosecution argued in response that the officers had both probable cause to search the Jeep

3

for contraband and reasonable suspicion of criminal activity that allowed them to remove defendant from the vehicle as part of an investigatory *Terry* stop, at which point the officers discovered the handgun.[4]

The trial court issued an opinion and order granting defendant's motion to suppress. The trial court found that the only evidence supporting the seizure of the Jeep was the smell of marijuana and that police did not have probable cause to search the vehicle. However, the trial court made no finding of whether there was reasonable suspicion to justify a *Terry* stop during which the police might have lawfully discovered the handgun. The trial court found that "[t]he search of the vehicle to recover the firearm is not covered under the plain view exception because the firearm was not visible until [defendant] had already been removed from the vehicle." The trial court dismissed the case against defendant without prejudice.

The prosecution appealed by right. In a published opinion, the Court of Appeals affirmed the trial court, agreeing that the officers lacked probable cause to seize and search the Jeep. The Court of Appeals noted that, under this Court's decision in *Kazmierczak*, the smell of marijuana alone could give the police probable cause to search a vehicle for marijuana.[5] But *Kazmierczak*'s rule had not been revisited since the 2018 enactment of the MRTMA, which generally decriminalized marijuana possession and use by adults of legal

---

[4] The trial court treated this as an argument that the officers saw the handgun in plain view when defendant exited the vehicle.

[5] *People v Armstrong*, 344 Mich App 286, 297; 1 NW3d 299 (2022), citing *Kazmierczak*, 461 Mich at 421-422.

4

age.[6]  The Court of Appeals then held that the MRTMA's decriminalization of marijuana "changed the law concerning possession and use of marijuana, superseding" *Kazmierczak*.[7]

Considering alternative approaches to determine how the smell of marijuana factors into a probable-cause analysis, the Court of Appeals settled on a "middle-ground approach"—that although the smell of marijuana cannot by itself create probable cause, it may lead to probable cause if combined with other factors suggestive of criminal activity.[8] Applying that standard to the trial court's finding that the smell of marijuana alone led to the officers' seizure of the Jeep, the Court of Appeals concluded that no probable cause existed.[9]  The Court of Appeals declined to consider defendant's furtive movements as additional factors supporting probable cause because these occurred after the police had already seized the Jeep on the basis of the smell of marijuana alone.[10]

After the prosecution filed an application for leave to appeal, the Court ordered oral argument on the application.[11]

---

[6] *Armstrong*, 344 Mich App at 297-298.

[7] *Id*. at 299.

[8] *Id*. at 300.

[9] *Id*. at 301.

[10] *Id*.

[11] *People v Armstrong*, 513 Mich 892 (2023).  We ordered the parties to file supplemental briefs addressing:

> (1) whether the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., supersedes the rule that "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement," *People v Kazmierczak*, 461 Mich 411, 426; (2000) (footnote omitted); (2) if so, whether the exclusionary rule

## II. STANDARD OF REVIEW

A trial court's factual findings at a suppression hearing are reviewed for clear error, and the application of the Fourth Amendment is a question of law that this Court reviews de novo.[12]

## III. DISCUSSION

The lower courts erred by failing to consider whether the police seized the vehicle as part of a lawful *Terry* stop before discovering the handgun in plain view. Because of this failure, the Court should vacate the lower-court judgments and remand the matter for the trial court to consider whether it arose from a lawful *Terry* stop. The majority opinion dismisses the lower-court errors by relying on the trial court's finding that the handgun was discovered during a search. This is legally erroneous because that finding grows out of the trial court's incorrect application of the law.[13]

---

applies to searches conducted in good-faith reliance upon *Kazmierczak*, see *Davis v United States*, 564 US 229, 241 (2011); (3) alternatively, if the holding of *Kazmierczak* has been superseded by the MRTMA, whether the smell of marijuana alone may establish reasonable suspicion to perform an investigatory stop pursuant to *Terry v Ohio*, 392 US 1 (1968); and (4) if so, whether the trial court clearly erred in concluding that the firearm recovered in this case was not in plain view during an otherwise constitutional *Terry* stop. See *People v Champion*, 452 Mich 92 (1996). [*Armstrong*, 513 Mich at 892.]

[12] *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). As the majority opinion notes, defendant filed his motion to suppress in reliance on the Fourth Amendment alone and did not rely on the corresponding provision of the Michigan Constitution.

[13] The majority opinion analyzes probable cause and reasonable suspicion out of order. As the majority opinion acknowledges, the Court "would generally address the constitutionality of a seizure before the constitutionality of a search." *Ante* at 7 n 8. The majority goes on to state that it addresses the *Kazmierczak* rule first because "a conclusion that *Kazmierczak* remains good law . . . would necessarily support a conclusion that the investigatory stop at issue was also constitutional under the lesser standard of reasonable

6

Further, because the lower courts incorrectly deemed the entire seizure unreasonable, they failed to consider evidence besides the smell of marijuana that would have supported probable cause for a search. Accordingly, this is not a case that implicates the *Kazmierczak* rule. Indeed, it is entirely unnecessary to reach the *Kazmierczak* issue. Nonetheless, this Court has engaged in gymnastic maneuvers to conclude that the MRTMA has abrogated *Kazmierczak* in its entirety, a conclusion with which I strongly disagree.

## A. REASONABLE SUSPICION AND PLAIN-VIEW DISCOVERY

"Under certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest."[14] This type of seizure is permissible if the officer has reasonable suspicion, based on the totality of the circumstances, "that criminal activity is afoot."[15] "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."[16] Law enforcement may "make a *Terry* stop and briefly detain a person

---

suspicion." *Ante* at 7 n 8. Although framed as an explanation, this explains nothing. While it is true that the satisfaction of the higher standard would presumably mean that the lesser standard is also satisfied, this fact does not justify addressing the higher standard first. If it did, why would we ever start by considering the lesser standard?

[14] *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005), citing *Terry*, 392 US at 22.

[15] *Id*.

[16] *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996).

who is in a motor vehicle if the officer has a reasonable, articulable suspicion that the person is engaged in criminal activity."[17]

The trial court and the Court of Appeals both erred by failing to consider whether the police officers had reasonable suspicion of criminal activity that justified an investigatory *Terry* stop, during which they discovered the illegal handgun. Not every use of marijuana is free from criminal liability post-MRTMA. For instance, the operation of a motor vehicle in an area open to the public with any amount of marijuana in a person's body remains a criminal offense after the passage of the MRTMA.[18] And of course, it remains a crime to operate a vehicle while intoxicated.[19] Here, the smell of burnt marijuana coming from the occupied Jeep on a public street might have by itself created reasonable suspicion of criminal activity that justified a *Terry* stop to investigate further.[20] If so, the officers would then have been able to order defendant out of the vehicle in the interest of officer safety.[21]

The record suggests that Officer Genaw was able to see the handgun in plain view as defendant exited the vehicle. Plain-view discovery "allows police officers to seize,

---

[17] *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011), citing *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001).

[18] *People v Perry*, 338 Mich App 363, 379; 980 NW2d 92 (2021), citing MCL 257.625(8).

[19] MCL 257.625(1).

[20] See *Jenkins*, 472 Mich at 32.

[21] *Maryland v Wilson*, 519 US 408, 414-415; 117 S Ct 882; 137 L Ed 2d 41 (1997) (holding "that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"). Although the United States Supreme Court addressed a traffic stop in *Wilson*, and the interaction here was not technically a traffic stop, the relevant officer safety concerns are identical.

without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent."[22] As shown in the bodycam footage, Officer Genaw was standing next to the passenger's side door as defendant opened the door and stepped out. With the door being open and defendant out of the way, it is possible—even probable—that she would have had an unobstructed view through the open door and under the then-vacant passenger seat as she stood outside the car, where she would have been lawfully entitled to stand as part of the *Terry* stop.[23] Further, the incriminating nature of the handgun would plausibly have been apparent,[24] as it is presumptively illegal to conceal a handgun in a vehicle.[25]

To reject the possibility of plain-view discovery during a *Terry* stop, the majority opinion relies entirely on the trial court's finding that the police discovered the handgun during a search. With little explanation or review of the facts, the majority concludes that

---

[22] *Champion*, 452 Mich at 101.

[23] Officer Genaw later attested in her report that she could see the handgun "under the front passenger seat" as Corporal Eaton "began removing defendant from the vehicle." The bodycam footage does nothing to contradict this statement; in fact, Officer Genaw's position in relation to the vehicle and the open door supports the plausibility of her later account. Notably, in rejecting the idea that the handgun was in plain view, the trial court cited no evidence other than that the handgun was reportedly "under" the seat. Yet the trial court never attempted to explain why the handgun's being under the seat would have prevented Officer Genaw from seeing the handgun from outside the vehicle after defendant had exited.

[24] See *Champion*, 452 Mich at 101.

[25] See *People v Williams*, ___ Mich App ___; ___ NW2d ___ (April 18, 2024) (Docket No. 365299) (explaining that Michigan courts have long held that concealed possession of a handgun is presumptively illegal and that the burden is on an individual concealing a handgun to produce evidence of a CPL).

the prosecution has not shown this finding to be clearly erroneous. And because discovery during a search cannot also constitute discovery in plain view,[26] the majority rejects the argument that the handgun was found in plain view.

The problem with this line of reasoning is that the trial court's finding that the evidence was discovered during a search cannot be separated from the trial court's failure to consider whether an investigatory *Terry* stop occurred. For example, the trial court emphasized that the "search of the vehicle to recover the firearm [was] not covered under the plain view exception" because the handgun was not visible until after defendant "had *already been removed* from the vehicle."[27] The trial court also stated that "[n]either Corporal Eaton nor [Officer] Genaw had mentioned seeing a handgun *before* [*defendant*] *had been removed* from the vehicle."[28] These statements suggest that the trial court conflated the removal of defendant from the car with the performance of a search.[29] Because the trial court thought it was unreasonable for the officers to have defendant leave the Jeep, the court presumably thought that it was part of a search for the officers to open the passenger door and remove defendant from the Jeep, thereby removing the visual obstructions that precluded a plain view of the gun. Indeed, by requiring probable cause

---

[26] *Champion*, 452 Mich at 101.

[27] Emphasis added.

[28] Emphasis added.

[29] Further, the trial court's insistence that probable cause was needed from the very beginning of the encounter makes it difficult to discern precisely when or why the trial court thought that a search occurred.

to search the vehicle as the standard to justify the initial seizure, the trial court effectively treated the entire interaction as a search of the vehicle.

As already explained, during an investigatory stop of a vehicle, the police can order the occupants out of the vehicle as a matter of course.[30]  And that is the point at which Officer Genaw claimed to have seen the evidence from outside the vehicle.  Because the trial court failed to consider whether defendant was permissibly removed from the car and whether Officer Genaw viewed the handgun while lawfully standing next to the open door and empty car seat, we cannot take its finding that the weapon was discovered during a search at face value.  The trial court viewed the relevant facts through a lens of legal error.  Our resolution of the appeal should not hinge on such questionable findings.[31]  It is

---

[30] See *Wilson*, 519 US at 414-415.

[31] Although the initial legal error means that I would not review the trial court's findings for clear error, I note that some of the trial court's findings of fact seem at odds with the record.  Notably, because there was no hearing, the facts are presented to us in the same way that they were presented to the trial court.  The trial court emphasized that during the crucial seconds when Corporal Eaton's bodycam fell to the ground, "neither Corporal Eaton nor [Officer] Genaw verbalized that they discovered a handgun in the vehicle."  But at timestamp 1:57-1:59, while the camera lies on the ground with the view obscured, a somewhat muffled female voice can be heard saying something that could be "oh, there's something" or "oh, a handgun."  The trial court apparently did not notice this statement, as it went unmentioned in that court's opinion.  Further, at timestamp 2:02, when defendant and the officers come back into view, both officers are placing defendant into handcuffs with a seeming sense of urgency.  This contrasts with their positioning and actions only seven seconds earlier, when defendant's hands were on top of the Jeep with the officers behind him.  Next, a little more than 20 seconds after defendant was placed in handcuffs, as Corporal Eaton was taking defendant to the back of the car, Officer Genaw asked, "Do you have a CPL, sir?"  Within a few seconds of reaching the rear of the vehicle Corporal Eaton told the other officers that defendant had "a pistol in the car."  When defendant started to respond, Corporal Eaton cut him off, saying, "You could see it!"  The trial court did not acknowledge this last statement.  The trial court also did not fully address the context and timing of the officers' statements about the handgun.  It would have been strange, to say the least, for Officer Genaw's question about a CPL to have been the first

11

impossible to know what the trial court would have found had it properly considered whether the officers performed an investigatory stop justified by reasonable suspicion. Basic principles of judicial restraint demand that we obtain clarification of the facts under the applicable law before we use this case to address the validity of a longstanding rule of our Fourth Amendment jurisprudence.

The majority opinion does not acknowledge this problem. It instead adopts essentially circular reasoning—that the trial court's finding that the discovery occurred through a search obviates any need to address the legal error that preceded and apparently supported that finding. Because the challenged evidence could plausibly have been discovered in plain view during an investigatory *Terry* stop, yet the lower courts failed to consider this, I would remand to the trial court for consideration under the appropriate framework.

---

verbalization that there was a handgun beneath the seat. Yet this was apparently what the trial court thought happened. The video also suggests that Corporal Eaton would have had no opportunity to enter the car or search it in any way, as she did not enter or search the car on video, and she seems to have been standing next to the car dealing with defendant during the seven seconds of obscured footage. Given these facts, it is hard to see how she would have known that there was a "pistol in the car" and that "you could see it" unless she herself had either seen it from outside the car or else Officer Genaw had told her about it. And the only point at which Genaw could have told her about it—other than the question about a CPL, which probably would not have given Eaton basis to say only a few seconds later that there was a pistol in the car—was at timestamp 1:57-1:59, while the bodycam was on the ground and the muffled female voice can be heard. Again, I do not believe that this Court should now address any of these factual issues. We should instead remand the case for new proceedings in the trial court. It is only because the Court's resolution of the case forecloses further proceedings that I voice these criticisms now.

## B. PROBABLE CAUSE AND *KAZMIERCZAK*

The majority opinion adopts the Court of Appeals' conclusion that the enactment of the MRTMA abrogated our ruling in *People v Kazmierczak* that the smell of marijuana alone may create probable cause to search a vehicle. Whether the *Kazmierczak* rule remains good law is a significant question that deserves our attention when properly presented for adjudication. But this is not an appropriate case to review *Kazmierczak*. The Court of Appeals reached the *Kazmierczak* issue because it improperly required satisfaction of the wrong legal standard to justify the initial seizure of the Jeep, thereby discounting other, nonmarijuana evidence that could have supported probable cause for a search. The majority opinion commits the same error.

### 1. THE COURT OF APPEALS MISTAKENLY APPLIED *KAZMIERCZAK* TO AN INAPT SITUATION

To begin, it is helpful to explain the "probable cause" that is relevant to *Kazmierczak*. There are different, albeit related, contexts in which we use the term "probable cause." Some of the most common are probable cause for a search warrant,[32] probable cause for a warrantless search under an exception to the warrant requirement,[33] and probable cause for an arrest.[34] These contexts involve probable cause to believe that

---

[32] See *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012) ("A search warrant may only be issued upon a showing of probable cause.").

[33] See, e.g., *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996) (explaining in relation to the motor-vehicle exception to the warrant requirement, "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more").

[34] See *Champion*, 452 Mich at 115 ("Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy

13

criminal activity is afoot and that evidence will be found in a certain place[35] or that a specific individual is responsible.[36]

The *Kazmierczak* rule relates to probable cause to conduct a warrantless search of a vehicle. Under the motor-vehicle exception to the Fourth Amendment's warrant requirement, the police may search a vehicle without obtaining a warrant if probable cause exists to believe that the vehicle contains evidence of a crime.[37] There is probable cause to search a vehicle if the facts justify the issuance of a warrant,[38] meaning "where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place."[39] In *Kazmierczak*, this Court held "that the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement."[40] The *Kazmierczak* rule thus applies in the context of a vehicle search.

---

information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.").

[35] *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992).

[36] *Champion*, 452 Mich at 115.

[37] *United States v Ross*, 456 US 798, 808; 102 S Ct 2157; 72 L Ed 2d 572 (1982), citing *Carroll v United States*, 267 US 132, 153-154; 45 S Ct 280; 69 L Ed 543 (1925).

[38] *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999), citing *Ross*, 456 US at 809.

[39] *Kazmierczak*, 461 Mich at 417-418, quoting *Russo*, 439 Mich at 604.

[40] *Kazmierczak*, 461 Mich at 413.

But in another context, "probable cause" has been used as the standard for temporary seizures based on *civil infractions*.[41]  The police may temporarily seize a vehicle based on probable cause that a traffic violation has occurred.[42]  Similarly, under Michigan statute, a police officer who witnesses a civil infraction may stop and temporarily detain the offender for the purpose of issuing a written citation.[43]  Such situations have nothing to do with a search or with criminal activity.  Yet the Court of Appeals missed this distinction, conflating probable cause for a seizure based on a civil infraction with probable cause for a motor-vehicle search under *Kazmierczak*.  Notably, the MRTMA expressly does not authorize smoking marijuana in the passenger area of a vehicle on a public street[44] or consuming marijuana in a public place.[45]  Accordingly, these acts are at least civil infractions.[46]

---

[41] As the majority opinion notes, we have never addressed whether reasonable suspicion of a civil infraction can justify a *Terry* stop.

[42] See *People v Davis*, 250 Mich App 357, 363; 649 NW2d 94 (2002) ("Because Officer Hopkins had probable cause to believe defendant was in violation of three traffic laws, the stop was permissible.").  See also *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

[43] *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009), citing MCL 257.742(1).

[44] MCL 333.27954(1)(g).

[45] MCL 333.27954(1)(e).

[46] Arguably, these acts can also constitute criminal offenses.  MCL 333.7404(1) provides: "A person shall not use a controlled substance or controlled substance analogue unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article."  Part of the next subsection, MCL 333.7404(2)(d), states that a "person who violates this section as to . . . [m]arihuana . . . is guilty of a

The Court of Appeals observed that the prosecution had cited *People v Davis*—which involved a temporary seizure based on probable cause for a civil infraction[47]—as justification for the five officers surrounding the Jeep and engaging with the occupants based on the smell of burnt marijuana alone.[48]  Taking this position as its foil, the Court of Appeals then launched into its analysis of *Kazmierczak* and the MRTMA, ultimately holding that the underlying change in criminal law as to the legality of marijuana meant that *Kazmierczak* no longer governed the "analysis of whether the smell of marijuana, standing alone, constitutes probable cause to *search* for that substance."[49]  From there, the Court of Appeals concluded that the officers lacked probable cause to *seize* defendant by surrounding the Jeep, meaning that every discovery that followed was unlawfully obtained.[50]

The problem with this analysis is that *Kazmierczak*'s rule regarding the smell of marijuana relates only to probable cause for *searches* for contraband or evidence of a crime.[51]  It does not relate to the temporary *seizure* of a vehicle and its occupants based on

---

misdemeanor . . . ."  Because MCL 333.27954 lists several acts that the MRTMA "does not authorize," including smoking marijuana in the passenger area of a vehicle on a public way or consuming marijuana in a public place, it is possible that a person who does those things while also violating the restrictions of MCL 333.7404(1) and (2)(d) commits a misdemeanor, even post-MRTMA.  This appeal, however, does not require us to address that question.

[47] *Davis*, 250 Mich App at 363.

[48] *Armstrong*, 344 Mich App at 296.

[49] *Id*. at 299 (emphasis added).

[50] *Id*. at 301.

[51] See *Kazmierczak*, 461 Mich at 419-423.

16

probable cause to believe that a civil infraction has occurred, which is what the prosecution argued by invoking *Davis*. Indeed, *Kazmierczak*'s rule does not relate to seizures at all.[52]

The smell of marijuana alone can plausibly give the police probable cause to believe that a civil violation has occurred; nothing about the MRTMA's decriminalization of marijuana alters this fact. And of course, reasonable suspicion can also justify a seizure and investigation.[53] Yet the Court of Appeals appeared to believe that the standard to search a vehicle without a warrant needed to be satisfied before the police could seize the vehicle and investigate. In other words, the Court of Appeals demanded satisfaction of the wrong standard. Regardless of whether *Kazmierczak* remains good law, that case does not control whether the police in this case were lawfully authorized to seize the vehicle or its occupants. To the extent that the Court of Appeals believed that the continuing validity of the *Kazmierczak* rule was necessary to justify the officers' initial seizure of the Jeep and contact with defendant, the panel made a mistake of law. This, in turn, confused the rest of the Court of Appeals' analysis.

Because the Court of Appeals demanded satisfaction of the wrong standard (probable cause for a warrantless search of a vehicle) for the relevant action (the officers' seizure of the vehicle), it required probable cause before it should have. As a result, the Court of Appeals refused to consider additional probable-cause factors raised by the prosecution.[54] If the officers validly seized the vehicle and engaged with defendant, these

---

[52] See *id*.

[53] See Part III(A) of this opinion.

[54] See *Armstrong*, 344 Mich App at 301.

other factors would be relevant to the analysis, and the smell of marijuana smoke would no longer be the sole factor supporting probable cause for a search. Even if the Court of Appeals could have properly reached the *Kazmierczak* issue and adopted its "middle-ground approach"—that the smell of marijuana may be a factor supporting probable cause, even if it cannot alone establish probable cause—there might have been probable cause for a search here given the additional evidence.

## 2. THE MAJORITY OPINION REPEATS THE COURT OF APPEALS' ERROR

The majority opinion makes the same mistake by treating the marijuana smell as the only valid factor supporting probable cause for the alleged search.[55] Corporal Eaton reported that defendant made a furtive gesture toward the floor of the Jeep. She also stated that defendant's hands were shaking as she spoke with him. The trial court did not consider these facts. And the Court of Appeals expressly refused to consider them on the basis of its erroneous view of the law.[56] Without the erroneous seizure analysis, it is at least possible that this evidence, combined with the marijuana smell, might have provided probable cause to search the Jeep. That would be for the trial court to decide in the first instance, if necessary.[57]

More important for our present purpose is that the lower courts refused to consider this other evidence because they erroneously deemed the entire seizure illicit from the start

---

[55] *Ante* at 14-15 ("As applied in the present case, because the alleged basis for the officers' search of the automobile was the smell of marijuana standing alone, the search was not constitutional under the automobile exception to the warrant requirement.").

[56] See *Armstrong*, 344 Mich App at 301.

[57] As explained in Part III(A) of this opinion, there might have been no search at all.

for lack of probable cause to search the vehicle.[58]  Without that error, the "smell of marijuana alone"[59] was potentially not the only evidence supporting probable cause to search.  This, therefore, is not necessarily a *Kazmierczak* scenario.[60]  Only by ignoring the lower courts' application of the wrong standard for seizing a vehicle can the majority opinion brush the other evidence under the rug and claim that "the smell of marijuana alone" supported any search that might have occurred.[61]  The majority opinion takes this approach even though it elsewhere concedes that the lower courts erred by not considering whether the seizure was justified by reasonable suspicion.

This case, properly construed under the correct legal standard, neither requires nor allows us presently to decide whether *Kazmierczak* remains good law.  The majority opinion decides an issue not properly before the Court rather than the issue that is.  Even

---

[58] See *id*.

[59] *Kazmierczak*, 461 Mich at 426.

[60] See *id*.

[61] The majority opinion claims that it is not disregarding this evidence but simply declining to address arguments not made by the prosecution.  This argument fails to appreciate that the existence of additional evidence supporting probable cause fundamentally undermines the analyses of both the Court of Appeals and the majority opinion.  Reaching the *Kazmierczak* issue requires the marijuana smell to have been the only valid evidence supporting probable cause.  The Court of Appeals concluded that the marijuana smell was the only valid evidence because the other evidence arose *after* the unreasonable seizure was initiated.  But as explained, the Court of Appeals applied the wrong standard for justifying the seizure.  The majority opinion accepts the Court of Appeals' mistaken premise for reaching *Kazmierczak* while ignoring the error.  The Court of Appeals' opinion also contradicts the majority opinion's assertion that the prosecution has never contended that the additional facts were relevant for probable cause.  See *Armstrong*, 344 Mich App at 301 ("The prosecution has anticipated our middle-ground approach by contending that additional facts coupled with the smell of marijuana constituted probable cause to justify removing defendant from the Jeep and searching the vehicle without a warrant.").

if the majority opinion is correct that the trial court's findings preclude the possibility of plain-view discovery during a *Terry* stop, the proper course is to remand this case for the trial court to consider all the factors supporting probable cause.[62]

Because the majority holds that *Kazmierczak*'s rule has been superseded, however, a response on the merits is warranted. Although passage of the MRTMA may have limited *Kazmierczak*'s scope, I am skeptical that the Court's rule has *no* continuing application. True enough, evidence of the mere possession or use of marijuana no longer automatically suggests criminal activity in the same way that it did when we decided *Kazmierczak*. But marijuana use can still be criminal in numerous situations, particularly in relation to motor vehicles. For example, operation of a vehicle with any amount of marijuana in a person's body remains a crime,[63] as does operating a vehicle while intoxicated.[64]

With this in mind, I am not convinced that there are no remaining situations where the smell of marijuana coming from a vehicle could by itself provide "a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found" in

---

[62] Because the prosecution did not preserve the issue in the trial court, the majority opinion declines to address one of the issues on which we heard oral argument: whether the good-faith exception to the exclusionary rule should apply on the basis of the police officers' reliance on *Kazmierczak*. See *ante* at 15 n 12, citing *People v Hamacher*, 432 Mich 157, 168; 438 NW2d 43 (1989) (declining to address an unpreserved issue). Given that the majority opinion does not remand the case, as I would, I agree with the decision not to address this unpreserved issue. That said, the majority opinion's invocation of preservation here is notable, as the Court has not been a stickler for preservation requirements in recent years. See, e.g., *People v Gafken*, 510 Mich 503, 537 n 1; 990 NW2d 826 (2022) (ZAHRA, J., dissenting). I can only hope that this case signals a commitment to abiding by traditional principles of preservation in future cases.

[63] *Perry*, 338 Mich App at 379.

[64] MCL 257.625(1).

the vehicle.[65]  Although a narrower version of the *Kazmierczak* rule makes sense post-MRTMA, the majority does not justify its wholesale repudiation of basing probable cause on the smell of marijuana alone in any instance.  Even if this case allowed us to consider *Kazmierczak*, I see no reason to adopt such a categorical rule.

## IV.  CONCLUSION

The lower courts erred by failing to consider whether the handgun could have been discovered in plain view during a *Terry* stop.  The lower courts' errors leave open the possibility that the smell of marijuana was not the only valid evidence supporting probable cause.  Accordingly, the facts of this case, as presented, do not allow us to revisit *Kazmierczak*.  For these reasons, I dissent.  I would vacate the judgments of the lower courts and remand to the trial court for a new ruling on the motion to suppress under a correct understanding of the law.

Brian K. Zahra

THOMAS, J., did not participate because the Court considered this case before she assumed office.

---

[65] *Kazmierczak*, 461 Mich at 421.